UNITED STATES of America, Plaintiff-Appellant,

v.

Timothy Paul MUEGGE, Defendant-Appellee.

No. 99-14778.

United States Court of Appeals,

Eleventh Circuit.

Sept. 7, 2000.

Appeal from the United States District Court for the Middle District of Georgia.

Before EDMONDSON and BIRCH, Circuit Judges, and SHAPIRO[*], District Judge. (No. 99-00023-CR-WDO-1), Wilbur D. Owens, Jr., Judge.

PER CURIAM:

This is an appeal from a decision granting defendant's motion to suppress. This court has jurisdiction under 28 U.S.C. § 3731.

Appellee Timothy Paul Muegge ("Muegge") was charged with two counts of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(A) and (B). The district court granted Muegge's motion to suppress testimony elicited during an August 25, 1998 interrogation and evidence obtained as a result. The United States timely appeals that decision and the subsequent denial of its motion for reconsideration. We reverse.

Muegge was a civilian employee at the Robins Air Force Base in Warner Robins, Georgia. In August, 1998, the Air Force Office of Special Investigations ("OSI") investigated reports that base employees were using a government computer to view child pornography. Then OSI Counter Intelligence Division Chief Christina Simpers ("Simpers") conducted the investigation with the assistance of, among others, Special Agent Scott Auerbach ("Auerbach"), an expert in the forensic analysis of computers. OSI surveillance using a closed circuit television and a video capture device revealed individuals looking at sexually explicit adult

[*]Honorable Norma L. Shapiro, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

material on that computer. Auerbach testified that a picture of Muegge using the computer was never captured, but the OSI decided to interview Muegge after interviewing another individual.

At the request of the OSI, Muegge's supervisor directed him to appear for questioning at the OSI detachment building on August 25, 1998. Muegge went to the detachment building alone at the appointed time. The building was a secure site, locked at all times. Muegge was admitted by one of the two persons interviewing him; the door to the interview room was kept closed when not in use. After the interview lasting approximately two and one half hours, Muegge was in the interview room an additional half hour during which time he made a statement reduced to writing and signed by him. Muegge, as all visitors to the OSI, was escorted the entire time he was inside the building. Muegge left the building twice during the interview for cigarette breaks; he was accompanied by at least one OSI agent, who did not smoke.

At the suppression hearing, both OSI interviewers testified they told Muegge he did not have to answer their questions and was free to leave. Muegge testified that he did not remember whether he was so informed, but Simpers testified that Muegge had acknowledged he understood the instruction.

During the interview, Muegge admitted, both verbally and in writing, that he viewed pornography, including a site with child pornography in the form of thumbnail photographs, on the government computer. He also admitted viewing pornography on his home computer. Muegge executed a form consenting to the search of his private residence. A later search of his home computer revealed numerous sexually explicit images, some of which are the subject of Count II of the indictment. He was not arrested until April 28, 1999, over eight months after the interview.

Muegge was not read *Miranda* warnings before or during the interview. He was given an interview form with a statement of *Miranda* rights, but a line was drawn through the statement with the word "non-custodial" written on the form by Simpers. Muegge initialed the line in three places. The time on this interview sheet is 15:30. The government acknowledges the interview began at 13:10 and ended at 15:30; Muegge concluded his written statement at 16:00; this is consistent with the testimony that this form was given to Muegge after the oral interview but prior to his written statement.

Muegge, filing a motion to suppress, argued his interview statements were given while in custody without prior *Miranda* warnings. The district court, assuming Auerbach told Muegge he was free to leave, nevertheless found that the interrogation was custodial.

The issue is whether the district court erred in finding that Muegge's interview was a custodial interrogation requiring *Miranda* warnings. In reviewing a motion to suppress, the district court's findings of fact will be upheld unless clearly erroneous, but the application of the law to those facts is subject to *de novo* review. *See United States v. Adams,* 1 F.3d 1566, 1575 (11th Cir.1993). The appellate court should construe the facts in the light most favorable to the party who prevailed below. *See United States v. Alexander,* 835 F.2d 1406, 1408 (11th Cir.1988) (affirming district court's denial of motion to suppress evidence seized in a warrantless search) (citing *United States v. Baron-Mantilla,* 743 F.2d 868, 870 (11th Cir.1984)) (affirming denial of motion to suppress; "we view the evidence adduced at the suppression hearing in the light most favorable to the government.").

A person taken into custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government concedes Muegge was not advised of these rights prior to questioning, but such advice was required only if the interrogation was custodial in nature.[1]

Even if a person has not been arrested, advice of *Miranda* rights is required if there is a restraint on freedom of movement "of the degree associated with a formal arrest." *Minnesota v. Murphy,* 465 U.S. 420, 430, 104 S.Ct. 1136, 79 L.Ed.2d 409, *reh'g denied,* 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984). The test is objective; "[t]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The fact that an investigation has focused on a suspect does not necessarily trigger the need for *Miranda* warnings. *See United States v. Phillips,* 812 F.2d 1355, 1360 (11th Cir.1987). "[I]n order for a

---

[1]The interview form that was marked by the agents as "non-custodial" and initialed by Muegge is irrelevant to our analysis. A reasonable man might not have understood the significance of the word "non-custodial." It is also clear from the record that Muegge was not given this form until after the oral interview had concluded; Muegge could not waive his *Miranda* rights after the fact.

court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." *Id.* (citations omitted). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable *innocent* person." *United States v. Moya,* 74 F.3d 1117, 1119 (11th Cir.1996) (emphasis added).

Muegge was a suspect in the investigation prior to his interview, but he was not the only suspect. His status as a suspect, and the "coercive environment" that exists in virtually every interview by a police officer of a crime suspect, did not automatically create a custodial situation. *See Phillips,* 812 F.2d at 1360-61 (interview of suspect by police officers in station not custodial).

Both Simpers and Auerbach testified at the suppression hearing that Muegge was told he was free to leave at any time and did not have to answer any questions. Muegge testified he did not remember that, but he also stated he "was very apprehensive and nervous [and] there's a lot about [the interview] that's vague." (R2 at 64.) The district court did not make any finding of fact whether Muegge was told he was free to leave, but merely assumed Auerbach so advised him. Any finding of fact to the contrary would have been clearly erroneous, because there was no finding of lack of credibility of the two OSI agents who testified consistently that they advised Muegge he was free to leave and Muegge was uncertain what he was told. Therefore, we may consider that Muegge was so advised in determining whether the interrogation was custodial by an objective standard, i.e., whether a reasonable innocent individual in those circumstances would feel free to leave.

The trial judge erroneously gave undue weight to the fact that Muegge's supervisor ordered him to report for the interview. Muegge's supervisor did instruct him to report to the OSI detachment, but such an order, absent other coercive elements, did not constitute the type of restraint on Muegge's freedom associated with a formal arrest. *See United States v. Mahan,* 190 F.3d 416, 421 (6th Cir.1999) (defendant not in custody despite being summoned to interview by work supervisor); *United States v. Leese,* 176 F.3d 740 (3d

Cir.1999) (postal employee interview not custodial despite postmaster's order to speak with postal inspectors in the postmaster's office); *United States v. Baird,* 851 F.2d 376, 380 (D.C.Cir.1988) (Coast Guard officer's interview not custodial despite order by his superior officer to appear for an interview with a Treasury Department investigator). Muegge's supervisor simply instructed him to attend the interview. There is no evidence this instruction was accompanied by any explicit or implicit threat to Muegge's employment status.

The finding that Muegge's interrogation was custodial is an application of law to the facts subject to *de novo* review. The key inquiry in determining if interrogation was custodial is whether an innocent individual in that situation would feel free to leave, *see Phillips,* 812 F.2d at 1360; *Moya,* 74 F.3d at 1119. If the individual being questioned were innocent, and was told directly he might leave, in the absence of evidence to the contrary the interrogation was non-custodial as a matter of law. There may be situations where the restraints placed on a suspect's freedom are so extensive that telling the suspect he was free to leave could not cure the custodial aspect of the interview, but that is not the case here.

Muegge was questioned in a secure facility, but that does not necessarily make the interrogation custodial. In *Phillips,* one of the defendants, suspected of illegal firearm sales, was asked by a police officer to come to the police station, accompanied by other officers. *See Phillips,* 812 F.2d at 1357. The defendant went to the station but was not placed under arrest, handcuffed or locked in a room. *See id.* The officers never told the defendant he was free to leave, even though one testified that he was in fact free to leave at any time. *See id.* This court found the *Phillips* interrogation was non-custodial. *See id.* at 1362. Like the defendant in *Phillips,* Muegge was interrogated in a secure facility but never placed under arrest or physically restrained in any significant way. Muegge's freedom was arguably less restricted than Phillips because it is assumed he was explicitly told he could leave at any time.

Several other characteristics of Muegge's interrogation made it non-custodial. Although he was told to report to the OSI detachment, Muegge came and left on his own. Muegge was given a beverage and two cigarette breaks. Muegge was escorted during the breaks, but Auerbach testified that all visitors to the OSI detachment were accompanied by escorts while they were inside the building. Although the facility was

locked, Simpers testified no key was needed to leave. Muegge left immediately after the interview and was not arrested until more than eight months later.

Under the totality of the circumstances, an innocent individual in Muegge's position who was told he was free to stop answering questions and leave at any time would have actually felt free to do so. A reasonable man would not have felt a restraint on his freedom of movement of the "degree associated with a formal arrest." *Phillips,* 812 F.2d at 1360. Muegge was not in custody during his questioning. The order granting Muegge's motion to suppress testimony elicited during the August 25, 1998 interrogation, and evidence derived therefrom, is

REVERSED.