[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-13264
Non-Argument Calendar
_____

D. C. Docket No. 05-00272-CR-02-WSD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY OPOKU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 13, 2006)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Anthony Opoku appeals his conviction for aiding and abetting in making false statements on a Bureau of Alcohol, Tobacco, and Firearms ("ATF") Form 4473, in connection with the purchase of three firearms, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2. On appeal, Opoku challenges the district court's denial of the following three motions: (1) a motion to suppress statements; (2) a motion for judgment of acquittal; and (3) a motion for mistrial. For the reasons set forth more fully below, we affirm.

## I. Factual and Procedural History

A federal indictment charged that Opoku, together with George Appiah, made false statements on ATF Form 4473. Specifically, the indictment charged that Appiah indicated on the Form 4473 that he was the actual buyer of three firearms. However, Appiah was not the actual buyer because Opoku had requested that Appiah buy the firearms for him and Opoku took possession of the firearms after the purchase.

Prior to trial, Opoku filed a motion to suppress statements, arguing that any statements he made during an interview with ATF agents had to be suppressed because he was not advised of his Miranda[1] rights before the interview, despite being effectively "in custody." At the suppression hearing, ATF agent Benjamin

_____

[1]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Gibbons testified that he and agent John Gray went to Opoku's house and asked if they could speak to him about firearms that he may have possessed. Opoku invited the agents inside and they all sat at the dining room table. Agent Gibbons had a gun, but it was concealed inside of his pants. The interview lasted approximately 45 to 60 minutes, during which time Opoku was not handcuffed and the agents did not make any promises or threats. The agents had not planned to arrest Opoku when they went into his home; rather, they planned on indicting him at a later date. However, they changed their minds because Opoku indicated during the interview that he was not a United States citizen and that he intended to travel back to Ghana, Africa in the near future. The agents did not advise Opoku of his Miranda rights because he was not under arrest or detained at the time. Opoku left the table several times during the interview, but, as a safety precaution, the agents always followed him or kept him in sight. The district court denied Opoku's motion to suppress, finding that, under the totality of the circumstances, a reasonable person in Opoku's circumstance would not have considered his freedom of movement to be restrained.

At trial, Appiah testified that, in November 2004, Opoku "called me and asked me is there any way I can buy a gun for him. And I asked him, [w]hy don't you go and buy it yourself? And he told me he had bought some before, but he

3

don't want his name to appear." (Id. at 145-46). At that point, Opoku's counsel stopped Appiah's testimony and objected to Appiah's testimony on the grounds that it introduced evidence of Opoku's prior bad acts, in violation of Federal Rule of Evidence 404(b). Opoku's counsel then moved for a mistrial. The district court overruled the objection and gave a limiting instruction to the jury:

> As you have probably seen so far, a trial is a dynamic process, and sometimes there are miscommunications in connection with the taking of the testimony. In this case there has been a miscommunication. There has been a question asked of this witness about why he did something in connection with the crime that's been alleged and a specific reference to, although not entirely clear, about Mr. Opoku and prior conduct in connection with the purchase of guns. That statement was made in error, and it resulted from a misunderstanding in the question that was asked. And you are to entirely disregard any reference to any prior purchase by Mr. Opoku of any guns, either directly or indirectly. That this is one of those times when I told you I might have to give you an instruction to exclude your consideration of evidence. And I am instructing you not to - - I'm instructing you not to consider in any way any statement about any prior purchase of guns by Mr. Opoku because that was a misunderstanding.

Appiah further testified that Opoku instructed him to meet at a pawn shop to purchase the guns. Appiah then identified the form he completed at the pawn shop, on which he certified that all the information he wrote on it was true and correct. He next stated that he paid for three guns and that he and Opoku then went to a shooting range to test the guns. They returned to the pawn shop because one of the guns malfunctioned. Thereafter, they went to a bank, where Opoku took out

4

money and paid Appiah the exact amount that Appiah had originally paid for the guns. Appiah took Opoku back to his car and Opoku left with the three guns.

The government also called ATF agent Benjamin Gibbons to testify. Agent Gibbons stated that, during an investigation, he learned that Appiah had purchased three guns from the Gwinnett Pawn Shop and filled out a form 4473 there. On the form 4473, Appiah indicated that he was the actual buyer of the three firearms. Agent Gibbons further testified that he went to Opoku's house to interview him regarding the guns. During the interview, Opoku explained that his uncle in Ghana needed replacement parts for his guns, and, because Opoku thought he could not purchase the guns himself, he asked his friend Appiah to make the purchase. Opoku also told Agent Gibbons that he sent the three guns to Ghana and retrieved them upon his arrival there. On cross-examination, Agent Gibbons testified that, unlike illegal aliens who are not permitted to purchase firearms in the United States, resident aliens may legally purchase firearms. He further stated that, because Opoku was a resident alien, Opoku could have legally purchased firearms in the United States.

Joseph Douglas Young, the manager of the Gwinnett Pawn Shop, also testified for the government. Young stated that his shop had a federal firearms license in 2004 and that a federal Form 4473 had to be completed by the buyer

when buying a gun in his shop. At the close of the government's case, Opoku's counsel moved for judgment of acquittal, arguing that Opoku could not be convicted of participating in an illegal "straw purchase" of firearms because he could have legally purchased the firearms as a resident alien.

Opoku then testified in his own defense, stating that he did not ask Appiah to purchase the guns, but rather, Appiah volunteered to buy the guns. Opoku did not assist Appiah in filling out the Form 4473. After Opoku's testimony, the defense rested its case and renewed its motion for judgment of acquittal. The district court denied the motion for judgment of acquittal, finding that, under § 924(a)(1)(A), it was not material that the actual buyer, in this case Opoku, could have legally bought firearms because the violation of the statute was the falsification of the ATF forms.

## II. Discussion

### A. Motion to Suppress Statements

Opoku argues that the district court erred in denying his motion to suppress statements that he made during the interview with the ATF agents at his home and prior to his formal arrest. He contends that a reasonable person in his position would have felt a restraint on his liberty and freedom of movement during the interview because the agents followed and continuously watched him. He further

6

asserts that it was apparent during the interview that the agents planned to arrest him. He thus concludes that, because he was effectively in custody during the interview, the agents violated his Fifth and Sixth Amendment rights by failing to advise him of his Miranda warnings.

We review the district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the court's findings of fact for clear error and application of the law to those facts de novo. United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). Moreover, we will "construe the facts in the light most favorable to the party who prevailed below." United States v. Muegge, 225 F.3d 1267, 1269 (11th Cir. 2000).

According to Miranda, a person taken into custody "or otherwise deprived of his freedom of action in any significant way" must be advised of his right to remain silent and his right to counsel prior to any interrogation. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. Such advice is necessary, however, only if the interrogation was custodial in nature. Id.; see also Muegge, 225 F.3d at 1270. Here, it is undisputed that the ATF agents did not provide Miranda advice to Opoku prior to the interview, but the government maintains that the interview was non-custodial.

The test for whether a person's freedom of movement had been so restricted

7

during an interrogation that it amounted to a custodial interrogation is objective: "[t]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). We have explained that,

> in order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave.

Muegge, 225 F.3d at 1270 (quoting United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir.1987)). "The fact that an investigation has focused on a suspect does not necessarily trigger the need for Miranda warnings." Id., 225 F.3d at 1270.

Contrary to Opoku's argument, the district court did not err in finding that, under the totality of the circumstances, a reasonable person in Opoku's position would not have felt that his freedom of movement was so restricted that he was not free to leave. As the record reflects, Opoku was never restrained by the agents or told that he could not leave. There was no evidence that the agents brandished their weapons or used any show of force. Moreover, Opoku freely moved about his apartment during the entire interview, albeit under the agents' supervision as a safety precaution. Thus, there was no indication by the agents' conduct that Opoku was restrained to such a degree as is associated with a formal arrest.

8

## B. Motion for Judgment of Acquittal

Opoku argues that the basis for his motion for judgment of acquittal presented a novel question in this Circuit, specifically, whether he could have been convicted under § 924(a)(1)(A) where a third party bought firearms for him, commonly called a "straw purchase," but he was legally eligible to buy firearms himself. Opoku contends that the Fifth Circuit, in United States v. Polk, 118 F.3d 286 (5th Cir. 1997), held that, though Polk had participated in a straw purchase for firearms by having his codefendant falsely represent himself as the actual purchaser, the evidence was insufficient against Polk because he could have lawfully purchased the firearms himself. He further asserts that our decisions in United States v. Nelson, 221 F.3d 1206 (11th Cir. 2000) and United States v. Ortiz, 318 F.3d 1030 (11th Cir. 2003), support the Fifth Circuit's holding. Opoku also maintains that § 924(a)(1)(A) was not intended to "capture legal firearms transactions or prosecute individuals who are legally permitted to purchase firearms." He argues that he was legally eligible to purchase firearms and, therefore, his conviction should be vacated.

We review a district court's denial of a defendant's motion for judgment of acquittal de novo. United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005).

9

We must determine whether, in viewing the evidence in the light most favorable to the government, a reasonable juror could have found the defendant guilty beyond a reasonable doubt. Id.

Pursuant to 18 U.S.C. § 924(a)(1)(A), any person who "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter" shall be fined or imprisoned not more than 5 years, or both. We have held that § 924(a)(1)(A) applies to straw purchases where a "straw purchaser" represents himself to be the actual buyer of firearms, but, in fact, buys the firearms for the defendant, who is deemed the "actual buyer." See Nelson, 221 F.3d at 1210. Under 18 U.S.C. § 2(a), whoever aids or abets the commission of an offense against the United States is punishable as a principal. According to Opoku's statutes of conviction, then, the government had to prove beyond a reasonable doubt that: (1) the Gwinnett Pawn Shop was a federally-licensed firearms dealer at the time of the instant firearms purchase; (2) Opoku and Appiah aided and abetted each other in making a false statement or representation in the firearms records that the Gwinnett Pawn Shop had to keep; and (3) Opoku and Appiah aided and abetted each other in making the false statement while knowing it to be false. See 18 U.S.C. §§ 924(a)(1)(A) and 2.

10

Opoku does not challenge on appeal the government's proof with regard to the above-mentioned statutory elements. Opoku argues, however, that the evidence was insufficient to sustain his conviction because, as a resident alien, he could have legally purchased the firearms at issue. Opoku relies on the Fifth Circuit's decision in <u>Polk</u>, where Polk argued on appeal that the evidence was insufficient to support his conviction under 18 U.S.C. § 922(a)(6) because he could have legally purchased the firearms that he had a third party purchase for him. According to § 922(a)(6), it is unlawful

> for any person in connection with the acquisition . . . of any firearm or ammunition from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm . . . under the provisions of this chapter.

18 U.S.C. § 922(a)(6). The Fifth Circuit determined "that § 922(a)(6) criminalizes false statements that are intended to deceive federal firearms dealers with respect to facts material to the '<u>lawfulness of the sale</u>' of firearms," and, thus, "if the true purchaser can lawfully purchase a firearm directly, § 922(a)(6) liability (under a 'straw purchase' theory) does not attach." <u>Polk</u>, 118 F.3d at 295 (emphasis in original).

In <u>Ortiz</u>, we addressed a defendant's challenge to the sufficiency of the

11

evidence upon which his conviction under § 922(a)(6) was based. See Ortiz, 318 F.3d at 1036-38. In finding the evidence sufficient to sustain the conviction, we explained that "[s]traw purchases of firearms occur when an unlawful purchaser . . . uses a lawful 'straw man' purchaser . . . to obtain a firearm. Id. at 1037. However, we cited Polk and noted that, because both the actual buyer and straw buyer in Ortiz's case were ineligible buyers, "we do not address the situation where both the ultimate buyer and the 'straw purchaser' are lawfully eligible to purchase firearms." Id. at 1038 n.16.

In Opoku's case, and according to the text of § 924(a)(1)(A), the government presented sufficient evidence upon which a reasonable juror could find Opoku guilty beyond a reasonable doubt. The evidence established that: (1) the Gwinnett Pawn Shop was a federally-licensed firearms dealer at the time Appiah and Opoku purchased the firearms; (2) Opoku aided and abetted Appiah in making a false statement on the Form 4473, namely, that Appiah was the actual purchaser of the firearms when, in fact, Opoku paid Appiah for the firearms and sent them to his uncle; and (3) Opoku and Appiah knew that the statement that Appiah was the actual purchaser was false. See 18 U.S.C. § 924(a)(1)(A). Under the text of § 924(a)(1)(A), the crime that the statute identifies is the act of making a false statement on a licensed firearms dealer's records, regardless of whether the

12

individual was truly eligible to purchase firearms. That statute is distinguishable from § 922(a)(6), the statute of conviction in <u>Polk</u> and <u>Ortiz</u>, because § 922(a)(6) requires the false statement to be made "with respect to any fact material to the lawfulness of the sale." Because § 924(a)(1)(A) lacks this qualifying language, the Fifth Circuit's reasoning in <u>Polk</u> is not analogous to the facts in the instant case. Therefore, because § 924(a)(1)(A) requires only a showing that the defendant knowingly made false statements on a federally-licensed firearms dealer's records, and the government made that showing at Opoku's trial, the district court did not err in denying Opoku's motion for judgment of acquittal.

## C. Motion for Mistrial

Opoku argues on appeal that the district court should have granted his motion for mistrial after Appiah testified that Opoku had previously purchased firearms because the government did not disclose prior to trial that Appiah would testify as to Opoku's prior bad acts. Opoku specifically contends that Appiah's testimony introduced evidence of Opoku's prior bad acts, which evidence was inadmissible under Rule 404(b) because the government did not provide notice of its intent to introduce such evidence. He acknowledges, however, that the government was unaware that Appiah was going to testify to Opoku's prior firearms purchases. He further asserts that the district court's curative instruction

13

to the jury did not cure the harm caused by Appiah's testimony, and, moreover, the instruction was misleading. He lastly argues that the court effectively denied his counsel the opportunity to make a closing argument because the court restricted counsel's argument with regard to discussing the prior purchases.

The decision of whether to grant a mistrial is within the sound discretion of the district court, and we review that decision for an abuse of discretion. United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003). "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. (quotation omitted).

Federal Rule of Evidence 404 provides,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . . provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). We have explained that, where otherwise inadmissible evidence is erroneously admitted, the error will not warrant a mistrial "if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." Harriston, 329 F.3d at 789 (quotation omitted). Moreover, "a prejudicial remark may be rendered harmless by curative instructions

14

to the jury." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992) (quotation omitted).

To the extent that Appiah's testimony introduced evidence in violation of Rule 404(b), that error was harmless. The government introduced sufficient evidence upon which the jury could conclude that Opoku aided and abetted Appiah in making false statements on the Form 4473. Specifically, Appiah testified that Opoku asked him to purchase firearms so that Opoku could send them to his uncle. Appiah purchased the firearms and Opoku reimbursed him for the cost. Appiah indicated on the Form 4473 that he was the actual buyer of the firearms. Opoku then took possession of the firearms and sent them to Ghana, where Opoku retrieved them and gave them to his uncle. Given this substantial amount of evidence that was not tainted by Appiah's remark regarding Opoku's prior firearms purchases, any error in admitting that testimony was harmless because it did not have a substantial effect on the outcome of the trial. See Harriston, 329 F.3d at 789. Furthermore, the court's curative instruction was detailed and firm, and it cannot be said that "the [erroneously admitted] evidence [was] so highly prejudicial as to be incurable by the trial court's admonition." See id. at 787 n.4.

Lastly, to the extent that Opoku argues that his counsel should have been permitted to include in her closing argument that there was no evidence that Opoku

15

had engaged in other firearms purchases, Opoku's argument on appeal is without merit. Upon a review of the trial transcript, it appears that the court allowed Opoku's counsel to argue that "the record [did] not show that Agent Gibbons obtained any other 4473 forms from Gwinnett Pawn Shop or any other gun store that indicates that Mr. Appiah ever bought guns for Mr. Opoku." The court merely restricted Opoku's counsel from taking the argument further because it would have been inconsistent with the court's curative instruction that the jury not consider any of Opoku's prior purchases. Thus, the court permitted Opoku's counsel to make the argument that Opoku now claims his counsel was prohibited from making. The court did not abuse its discretion in limiting the closing argument so that excluded evidence was not referenced again. See United States v. Hall, 77 F.3d 398, 400 (11th Cir. 1996) (explaining that district courts have broad discretion over closing arguments).

### III. Conclusion

In light of the foregoing, the district court did not err in denying Opoku's motions for suppression of statements, judgment of acquittal, and mistrial. Accordingly, Opoku's conviction is

**AFFIRMED.**

16