[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2007
THOMAS K. KAHN
CLERK

----------------------------------------

No. 06-10855
Non-Argument Calendar

----------------------------------------

D.C. Docket No. 02-00508-CR-T-17-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDRE T. PAIGE,

Defendant-Appellant.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

-----------------------------------------------------------------

**(July 18, 2007)**

Before EDMONDSON, Chief Judge, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Defendant-Appellant Andre Paige appeals his conviction after a jury trial

for committing several crimes, including aiding in murder with the intent to

prevent communication of information about a federal offense to a federal official,

in violation of 18 U.S.C. § 1512(a)(1)(C). No reversible error has been shown; we affirm.

### I.Motion to Suppress

Paige first argues that the district court erred in denying his motion to suppress (1) pre-arrest statements made in March 2002; (2) post-arrest statements made in December 2002; and (3) grand jury and trial testimony given in 2003 in a case against Jeffrey Bouyie.[1]

We review a district court's denial of a motion to suppress under a mixed standard of review, reviewing findings of fact under the clearly erroneous standard and reviewing <u>de novo</u> the application of law to those facts. <u>United States v. Gil</u>, 204 F.3d 1347, 1350 (11th Cir. 2000). And we construe the facts in the light most favorable to the prevailing party, in this case the government. <u>United States v. Santa</u>, 236 F.3d 662, 668 (11th Cir. 2000).

A.    Pre-Arrest Statements

In March 2002, Detective Louis Giampavolo, who was investigating the death of Officer Christopher Horner, interviewed Paige. Paige argues on appeal

---

[1]Bouyie was charged with, among other things, participating in robberies at a Florida Holiday Inn and Shoney's restaurant in March 1998.

that, because he was not read his <u>Miranda</u> rights before this interview, his statements made during the interview should be suppressed.[2]

The district court determined that the testimony of Detective Giampavolo and other officers present during Paige's March 2002 interview was more credible than Paige's testimony about how the interview occurred. The district court concluded that, under Detective Giampavolo's version of events, Paige's interview was non-custodial; so no <u>Miranda</u> warnings were required. Therefore, the district court denied Paige's motion to suppress statements made during this interview.

---

[2]Detective Giampavolo and Paige gave differing testimony about how the interview took place. According to Detective Giampavolo, Paige agreed to get into Detective Giampavolo's unmarked car and to go to the homicide department office because Paige did not have a car or a valid driver's license. Captain W.J. Martin was at the homicide department office when Detective Giampavolo arrived with Paige; and Captain Martin testified that nothing suggested that Paige was under arrest. Detective Giampavolo testified that he told Paige that Paige was not under arrest or in custody and that Paige was not handcuffed. Detective Giampavolo did not give Paige <u>Miranda</u> warnings. While interviewing Paige in an unlocked room with two other officers present, Detective Giampavolo explained to Paige that Christopher Gamble had confessed that he and Paige were involved with several armed robberies and Officer Horner's death. After Paige told Detective Giampavolo that he wanted to hear from Gamble, the police brought Gamble to Paige. Gamble told Paige that he had told the police "everything"; and Paige admitted that he was involved with a robbery at a Holiday Inn with Gamble and Bouyie. During the interview, Detective Giampavolo told Paige that Paige could leave; and Paige was allowed to use the bathroom unaccompanied. After the interview, Detective Giampavolo drove Paige to Paige's girlfriend's house.

But Paige testified that Detective Giampavolo told him that Paige "needed" to go to the homicide department's office and that Paige did not believe he had a choice whether or not to go. Paige testified that he went to the bathroom accompanied by Detective Giampavolo. Paige also testified that, at the homicide department, Detective Giampavolo placed Paige in a small cell for 10 or 15 minutes and locked the door. In addition, according to Paige, Detective Giampavolo told Paige that Paige would not have to worry if Paige cooperated with the authorities. Paige testified that he never asked to speak with Gamble; but Gamble still came to Paige's interview room. Paige also denied confessing to the Holiday Inn robbery.

"Even if a person has not been arrested, advice of Miranda rights is required if there is a restraint on freedom of movement of the degree associated with a formal arrest." United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (internal quotation omitted). For a suspect to be in custody, it must be apparent that, "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that degree associated with a formal arrest to such extent that he would not feel free to leave." United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (internal quotation omitted). "[T]he reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996).

The district court did not err in determining, under the totality of the circumstances, that a reasonable person in Paige's position would not have felt that his freedom of movement was restricted in a significant way. During the interview, Paige was sitting in an unlocked room, was permitted to go to the bathroom, and was told, according to Detective Giampavolo, that he could leave.[3]

_____

[3]We acknowledge that Paige testified that he did not believe that he could leave the interview. The district court determined that Paige's testimony was less credible than Detective Giampavolo's testimony; and "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). "In other words, we must accept the evidence unless it is contrary to the laws of nature, or

4

And after the interview, Detective Giampavolo drove Paige back to his girlfriend's house. Paige was not in custody during his interview; and because no custodial interrogation occurred, the absence of a <u>Miranda</u> warning does not render Paige's interview statements inadmissible.

### B.     Post-Arrest Statements

Detective Giampavolo arrested Paige in December 2002. Detective Giampavolo testified that he advised Paige of his <u>Miranda</u> rights when Paige was arrested and that Paige indicated that he understood his rights. Although Paige testified that Detective Giampavolo never read Paige his <u>Miranda</u> rights, he now acknowledges that "[i]t is possible that some type of warnings were read." Still Paige asserts that, even if the <u>Miranda</u> warning was given, he did not knowingly waive his <u>Miranda</u> rights in speaking to police because only a fool would have given a statement in that situation.

As we have discussed, we accept the district court's credibility determinations; so the district court's finding that Detective Giampavolo read Paige his <u>Miranda</u> rights when Paige was arrested was not clear error. And we are

is so inconsistent or improbable on its face that no reasonable factfinder could accept it." <u>Id.</u> (internal quotation and alteration omitted). We accept the district court's credibility determinations in this case.

unpersuaded by Paige's argument that his post-arrest statements were not given voluntarily because it would have been foolish for him to make those statements.

### C. Grand Jury and Trial Testimony

While represented by his retained lawyer, Karen Meeks, Paige testified in February 2003 before the grand jury in the criminal case against Jeffrey Bouyie and during Bouyie's May 2003 trial. Paige did not enter into a proffer agreement or a plea agreement before giving this testimony. Paige now argues that Meeks's representation of him during this time was so deficient that he essentially was unrepresented and that the government violated due process by obtaining incriminating statements from him during his testimony.[4] Paige also asserts that the district court should have suppressed his testimony because he was not read his Miranda rights before he testified.

We conclude that the district court did not err in refusing to suppress Paige's grand jury testimony and testimony during Bouyie's trial. Paige does not allege that the government coerced his testimony before the grand jury or at trial. See United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005) (explaining that the Fifth Amendment prohibits use of involuntary confessions at a criminal

---

[4]We note that it does not appear that Paige is raising an ineffective assistance of counsel claim on appeal.

trial and that the voluntariness inquiry focuses "on whether the defendant was coerced by the government into making the statement"). In addition, Paige fails to cite to authority stating that a witness before a grand jury or at a trial must receive Miranda warnings.[5] Although Paige asserts that "in hindsight[, he] would not have given any statements because they were not in his best interest," we are not convinced that the district court erred in denying Paige's motion to suppress his testimony statements.

## II. Sufficiency of Evidence

At Paige's trial, Christopher Gamble testified that a group, including he and Paige, robbed a Holiday Inn and then decided to rob a NationsBank branch. Just before daybreak, the group went to prepare for the bank robbery at a cemetery, where they changed clothes and consumed drugs. Inside the group's car at the cemetery were drugs, masks, gloves, and guns used in past robberies. At the cemetery, Officer Christopher Horner -- who knew Gamble from Gamble's past criminal activity -- approached the group members who were then dressed in black

---

[5]Paige did receive Miranda warnings when he was arrested in December 2002; and during his January 2003 arraignment and February 2003 arraignment on a superceding indictment, Paige was told by the magistrate judge that he had the right to remain silent and that he did not have to talk to anyone, including the government. The magistrate also told Paige in January 2003 that, if he chose to make statements about his case, he should assume that those statements would be used against him.

and wearing gloves and turned a spotlight on them. After Gamble told Officer Horner that Gamble was at the cemetery to visit his "auntie," Officer Horner told the group that he wanted to "run their names." A member of the group, Charles Fowler, approached Officer Horner from behind and grabbed him. Officer Horner then called out Gamble's name. At that point, the group -- including Paige -- "went a little crazy" and held Officer Horner down on his knees; Fowler then shot Officer Horner in the back of the head.

Paige argues that sufficient evidence was not presented at trial to convict him of aiding and abetting a murder to prevent the communication of information about a federal offense to a law enforcement officer or judge. He contends that the government did not present evidence that Officer Horner knew -- when he was killed -- that Paige and his co-conspirators had robbed a Holiday Inn and were preparing to rob a bank.

We review a challenge to the sufficiency of the evidence <u>de novo</u>, resolving all reasonable inferences from the evidence in favor of the jury's verdict. <u>See</u> <u>United States v. Rudisill</u>, 187 F.3d 1260, 1267 (11th Cir. 1999). "The jury's verdict must stand unless no trier of fact could have found guilt beyond a reasonable doubt." <u>United States v. Lyons</u>, 53 F.3d 1198, 1202 (11th Cir. 1995).

8

Under 18 U.S.C. § 1512(a)(1)(C), the government must establish beyond a reasonable doubt (1) the defendant killed or attempted to kill someone; (2) with the intent; (3) to prevent his victim from reporting a federal crime to a federal official. Here, according to Gamble's testimony, Officer Horner found the group dressed in black, wearing gloves, and preparing to commit a bank robbery. The group's car contained masks as well as guns used in the group's robberies. And just before the group subdued and shot Officer Horner, Officer Horner had stated that he wanted to run a check on everyone in the group. Officer Horner also identified one of the members of the group by name.

Viewing this evidence in the light most favorable to the government, a reasonable jury could find that Paige and the rest of the group killed Horner to prevent him from reporting their robbery activities.[6] See United States v. Veal, 153 F.3d 1233, 1251 & n.26 (11th Cir. 1998) (explaining that -- in the context of 18 U.S.C. § 1512(b)(3), which prohibits, among other things, engaging in misleading conduct with the intent to prevent communication of information about a federal crime to a federal official -- "it is sufficient if the misleading information is likely to be transferred to a federal agent" and noting that, about section

---

[6]In fact, when Gamble was asked during his testimony why the group had tried to distract Officer Horner as Fowler approached him, Gamble replied that the group's car contained drugs and other robbery tools, such as guns, and that "it would have been over with for all of us."

9

1512(a)(1)(C), "other circuits have concluded that possible or potential communication of information to federal authorities is sufficient"). Paige has offered no authority stating that a conviction under 18 U.S.C. § 1512(a)(1)(C) requires knowledge of the specific crime committed or to be committed; and we affirm his conviction under section 1512(a)(1)(C).

**AFFIRMED.**