[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11098
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00260-RAL-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JETMIR QOSE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 8, 2017)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Jetmir Qose appeals his convictions for transportation of child pornography, 18 U.S.C. § 2252(a)(1) and (b)(1), and possession of child pornography, 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Qose raises two issues on appeal.   First, he contends the district court erred in denying his motion to suppress evidence seized during the execution of a search warrant because the affidavit in support of the search warrant did not contain probable cause.  Qose also asserts the district court erred in denying his motion to suppress his pre-arrest statement to law enforcement because the statement was provided while he was in custody without being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966).  After review,[1] we affirm.

## I.  DISCUSSION

### A.  *Probable Cause*

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."  *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  Our staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues."  *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000).  Because "[t]here is no particular rule or

---

[1] In reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and the application of law to those facts *de novo*.  *United States v. Capers*, 708 F.3d 1286, 1295 (11th Cir. 2013).

time limit for when information becomes stale . . . staleness is an issue which must be decided on the peculiar facts of each case." *Id.* at 1265 (quotations omitted).  When determining staleness, courts should consider the length of time, "nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.*  "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Id.* (quotations omitted).  Stale information can establish probable cause if "the government's affidavit updates, substantiates, or corroborates the stale material." *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (quotations omitted).

The affidavit in support of the search warrant was not based upon stale information.  Although the investigation was initiated in September 2014, it was confirmed in March 2015 that Besim Qose was still the subscriber to the internet used by Jennifer123654.  Federal agents conducted surveillance on the Qose residence the same month they executed the search warrant and confirmed that Qose resided in the condominium and typically left for work at approximately 6:30 a.m.

Even assuming the information within the affidavit was stale, however, the agents who executed the warrant acted in good faith.  Consequently, exclusion of the evidence seized is not appropriate.  The Supreme Court has established a good-

faith exception to the judicially created exclusionary rule for evidence seized in violation of the Fourth Amendment. *United States v. Martin,* 297 F.3d 1308, 1312-13 (11th Cir. 2002) (citing *United States v. Leon,* 468 U.S. 897, 923 (1984)). This exception provides that courts generally should not render inadmissible evidence obtained by law enforcement acting in reasonable reliance upon a search warrant that is later found to be unsupported by probable cause. *Id.* at 1313. The focus of a *Leon* inquiry is the law enforcement agent; thus, the court must consider whether the officer acted reasonably and in an honest belief that he obtained a valid search warrant before conducting a search. *United States v. Taxacher,* 902 F.2d 867, 871-72 (11th Cir. 1990).

Even if Agent Cumming's affidavit was in some way lacking, Qose does not contend, nor does the record show, that the district court erred in concluding that the good-faith exception also justified denying the motion to suppress. *See United States v. Robinson*, 336 F.3d 1293, 1295 (11th Cir. 2003) (reviewing *de novo* whether the good-faith exception applies, and reviewing the underlying facts upon which that determination is based for clear error). The record does not demonstrate the agents acted in bad faith or were objectively unreasonable in relying on the warrant. No evidence indicated Agent Cumming's affidavit contained any knowing or reckless falsities or the magistrate judge who issued the warrant acted as a "rubber stamp" and failed to evaluate the information placed

4

before him.  Neither does the evidence establish Agent Cumming's affidavit was so inadequate in detail as to preclude the issuing judge from finding probable cause.  *See Leon,* 468 U.S. at 923 (providing while searches conducted pursuant to warrants will rarely require suppression, there are four situations in which suppression would be appropriate: (1) if the magistrate issuing a warrant was "misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) where "the issuing magistrate wholly abandoned his judicial role;" (3) where the "warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where a "warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid").  As such, the district court did not err in concluding that a factual basis indicated that child pornography would be found at the Qose residence and Agent Cumming's reliance on the validity of the warrant was objectively reasonable.

B.  *Statement to Law Enforcement*

The Fifth Amendment provides "[n]o person...shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In *Miranda v. Arizona,* the Supreme Court established a law enforcement agent may not conduct a custodial interrogation of a suspect before informing him of his rights

against self-incrimination.  384 U.S. 436, 473-74 (1966).  Statements made in violation of *Miranda* are not admissible at trial.  *Id.* at 444-45.

We described the test for determining whether an interaction is custodial as follows:

> A defendant is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Whether [a defendant] was in custody prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave.  The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant.  Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable *innocent* person.

*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations and citations omitted).  Although the location of an interview is not necessarily dispositive in determining whether a person is in custody, courts are much less likely to find a custodial encounter when the interrogation occurs "in familiar or at least neutral surroundings, such as the suspect's home."  *Id.* at 1348 (quotation and brackets omitted).

We consider several factors in determining whether a suspect is in custody, "including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled."  *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006)

6

(quotation omitted). An interviewee's "status as a suspect, and the coercive environment that exists in virtually every interview by a police officer of a crime suspect," does not automatically create a custodial situation. *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000).

The district court did not err in denying Qose motion to suppress his statement to police. The court's conclusion the interview was not custodial was based upon the record: Qose admitted he was told twice the interview was voluntary and he was free to leave; the agents' weapons were holstered; at no time did an agent physically touch Qose; the interview occurred in the parking lot of his residential community; Qose voluntarily entered the vehicle; he was not handcuffed or restrained in any way; his requests for water and temperature change during the interview were honored; he never asked to leave and never requested a lawyer; and he was provided with a telephone. In addition, Qose signed a consent form "freely and voluntarily without fear of threats; coercion, or promises of any kind," allowing the FBI to assume his online identity. The court emphasized the fact Qose told his employer he would be late to work—instead of stating he would not be in that day—as evidence of Qose's belief he was not under arrest. Whether or not Qose requested a lawyer was an issue of credibility, and the court credited the testimony of Agent Cumming and Detective Wagoner on that point.

Moreover, even if a *Miranda* violation occurred, any error in admitting the statement would be harmless beyond a reasonable doubt given the overwhelming evidence of Qose's guilt. *See United States v. Arbolaez,* 450 F.3d 1283, 1292 (11th Cir. 2006) ("The admission of statements obtained in violation of *Miranda* is subject to harmless error scrutiny."). Even discounting Qose's statement, the parties stipulated beyond a reasonable doubt that an undercover agent downloaded 13 files containing child pornography from user Jennifer 123654 on a P2P file sharing program located in Florida. The IP address Jennifer 123654 was using was registered to Besim Qose, who lived in the same home as Jetmir Qose. A search warrant was executed at the residence, and agents seized a Lenovo laptop computer named "Jetmir-PC" within the Microsoft Windows operating system. Qose's mother informed agents that neither she nor her husband use Qose's laptop, their household internet is secured with a password, and she was not aware of anyone outside the family having the password.

The parties further stipulated that computer contained numerous files detailing chats between Qose and P2P users, including a chat providing the undercover agent the password to access Qose's child pornography. At least 42 images depicting child pornography were located on the computer, which also utilized a media player application to access a child pornography video nine times. The Samsung hard drive contained multiple video files depicting child

8

pornography, and the Seagate hard drive contained at least one image downloaded by the undercover agent who accessed Jennifer 123654's files on the P2P program as well as numerous video fragments containing child pornography. Thus, even assuming the court did err in admitting Qose's statement, the remaining evidence is so overwhelming that it is clear beyond a reasonable doubt that the statement did not affect the verdict, and any error was thus harmless.

## II.  CONCLUSION

In conclusion, the district court did not err in denying Qose's motion to suppress evidence obtained during execution of the search warrant because the affidavit in support of the warrant was not based upon stale information. In addition, even if the information in the affidavit was stale, the district court did not err in denying the motion because the agents acted in reasonable reliance in executing the warrant. The district court also did not err in denying Qose's motion to suppress his statement. Qose was not in custody at the time he spoke to law enforcement. Moreover, even if the court did err in admitting the statement, such error is harmless in light of the overwhelming evidence of guilt against Qose. Accordingly, we affirm Qose's convictions.

**AFFIRMED.**