[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12712
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cr-00035-RH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TRACY TERESA WHITAKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 4, 2018)

Before MARTIN, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Tracy Whitaker appeals her convictions for theft of government funds, 18 U.S.C. § 641, and for making false statements, 18 U.S.C. § 1001(a).  Briefly stated, Whitaker's convictions stem from her misuse of Social Security disability benefits she received on behalf of her minor daughter (as her daughter's representative payee).  Whitaker was sentenced to three years' probation and ordered to pay restitution.  No reversible error has been shown; we affirm.

I.

Whitaker first contends that the district court erred in denying her motion to suppress statements she made during interviews with Social Security Administration ("SSA") claims specialist Orietta Escarra and with SSA Special Agent Phillip Krieger.  Whitaker challenges the district court's determination that she was not in custody when the statements were made and, thus, that she was unentitled to an advisement of her rights under Miranda v. Arizona, 384 U.S. 436 (1966).[*]

---

[*] Whitaker makes no substantive argument on appeal challenging the district court's determination that her statements were made voluntarily.

We review the denial of a motion to suppress as a mixed question of law and fact; we review fact findings for clear error and the application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). We construe all facts in the light most favorable to the party that prevailed in district court. Id.

After Escarra received information from private citizens indicating that Whitaker was misusing SSA benefits intended for Whitaker's minor daughter, Escarra contacted Whitaker to arrange an interview. Whitaker was told that failure to attend the interview would result in a suspension of her daughter's benefits. Whitaker was not told, however, about the allegations of fraud or that she was the target of an investigation.

The interview was conducted in a "standard office" that contained a desk, a computer, and chairs. The office had two doors: one leading directly to the lobby of the SSA building and one leading to the building's interior. During the interview, Escarra sat at the desk in front of the computer, while Whitaker sat in a chair on the opposite side of the desk. Escarra asked Whitaker basic questions similar to those listed on the routine SSA representative payee reports. In response to Escarra's questions, Whitaker reported falsely that her daughter lived with her and that she used her daughter's SSA benefits to pay for her daughter's care and maintenance.

3

After about 30 minutes of questioning, Escarra excused herself and returned 5 minutes later with Agent Krieger.  Agent Krieger sat in a chair at the end of the desk.  Agent Krieger identified himself as a law enforcement officer and told Whitaker he wanted to interview her.  Agent Krieger told Whitaker expressly that she was not under arrest and that she was free to leave.  Agent Krieger also presented Whitaker with a non-custodial advisement-of-rights form.  Agent Krieger read -- and Whitaker said she understood -- each section of the one-page form.  Among other things, the form advised Whitaker that she was not in custody, that she had the right to remain silent, that she was not required to make a statement, and that she was free to leave or to terminate the interview at any time.

Upon Whitaker's request, Agent Krieger prepared a written statement based on Whitaker's responses during the interview.  In her written statement, Whitaker admitted that her daughter lived solely with her father, that Whitaker reported falsely to the SSA that her daughter lived with her so that Whitaker could continue to receive SSA payments on her daughter's behalf, and that she had been using the SSA payments to pay for her own living expenses.  When the interview was over, Agent Krieger went over each paragraph of the written statement; and Whitaker confirmed that the statement was accurate and that she wanted to add, change, or remove nothing.  Agent Krieger's interview lasted about one hour.

That Whitaker was not advised of her <u>Miranda</u> rights is undisputed.  A <u>Miranda</u> warning is required, however, only when a person is "in custody" when they made the challenged statement.  <u>United States v. Muegge</u>, 225 F.3d 1267, 1269-70 (11th Cir. 2000).  A person is considered "in custody" for purposes of triggering <u>Miranda</u> warnings when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (quotation omitted).  In determining whether a person was "in custody," we consider whether -- given the totality of the circumstances -- a reasonable innocent person "in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that degree associated with a formal arrest to such extent that he would not feel free to leave."  <u>Muegge</u>, 225 F.3d at 1270 (quotations omitted).

Factors that bear on whether a person is in custody include "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled, as well as the location and length of the detention."  <u>United States v. Luna-Encinas</u>, 603 F.3d 876, 881 (11th Cir. 2010) (citation and quotation omitted).  We may also consider other things: for example, statements made during the interview, the presence of physical restraints during questioning, and "the release of the interviewee at the end of the questioning."  <u>Howes v. Fields</u>, 565 U.S. 499, 509 (2012).  Moreover,

"that an individual is told he is not under arrest and is free to leave is a fact of substantial importance in determining whether a reasonable person would have felt free to leave." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006).

Considering the totality of the circumstances, we conclude that Whitaker was not "in custody" during her interviews with Escarra or with Agent Krieger and, thus, no Miranda warning was required. The interviews took place in a standard office space located just off the lobby of the SSA building, that is, with easy means to leave. During the interviews, Escarra, Agent Krieger and Whitaker were seated in chairs around a desk. Nothing evidences that either Escarra or Agent Krieger brandished a weapon, touched Whitaker, placed Whitaker in restraints, or otherwise threatened or intimidated Whitaker verbally or physically. Whitaker was also permitted to leave the room and the SSA building after the interview concluded.

During her interview with Escarra, Whitaker was asked only routine questions about SSA benefits. On this record, a reasonable innocent person in Whitaker's position would not have felt a restraint on her freedom of movement to the degree associated with a formal arrest.

About Whitaker's interview with Agent Krieger, Agent Krieger told Whitaker expressly that she was not under arrest, opened and closed the door to show her she could leave, and told her she was free to go at any time if she did not

want to speak with him.  Agent Krieger also read Whitaker a non-custodial advisement-of-rights form, which advised expressly that Whitaker was free to leave or to terminate the interview at any time.  Both Agent Krieger's conduct and this form statement constitute strong evidence that a reasonable innocent person in Whitaker's situation would have felt free to leave.  See Brown, 441 F.3d at 1347 ("absent a finding of restraints that are so extensive that telling the suspect he was free to leave could not cure the custodial aspect of the interview," such advisements generally "lead to the conclusion that the defendant is not in custody." (emphasis in original)).  Whitaker also testified that Agent Krieger was "very nice" during the interview, and nothing evidences that Agent Krieger engaged in threatening or coercive conduct.  Under these circumstances, an objectively reasonable innocent person would have felt free to leave.  That Whitaker may have felt subjectively compelled to comply with Escarra and with Agent Krieger out of concern about losing her or her daughter's SSA benefits does not change our conclusion.  See Oregon v. Elstad, 470 U.S. 298, 304-05 (1985) (noting that the Fifth Amendment is not implicated by "moral and psychological pressures to confess emanating from sources other than official coercion.").

     Because Whitaker was not "in custody" when she made her statements to Escarra and to Agent Krieger, a Miranda warning was not mandated; no

constitutional violation occurred.  The district court committed no error in denying Whitaker's motion to suppress.


## II.


Whitaker also challenges the district court's denial of her motion for judgment of acquittal.  In support of her motion, Whitaker argued that the government failed to prove that the SSA payments constituted "property of the United States" for purposes of 18 U.S.C. § 641 after they were deposited in her bank account.

"We review de novo a district court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict."  United States v. Slaton, 801 F.3d 1308, 1313 (11th Cir. 2015).  To sustain a conviction under 18 U.S.C. § 641, the government must establish beyond a reasonable doubt that (1) the property belonged to the government; (2) the defendant appropriated fraudulently the property for her own use; and (3) the defendant did so knowingly and willfully with the intent to either temporarily or permanently deprive the owner of the use of the property.  United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993) (en banc).  Only the first element is at issue here.

In the light of our decision in McRee, we reject Whitaker's argument that the SSA payments once deposited into her bank account were no longer government property. In McRee, we concluded that the government retained a property interest in the proceeds of an erroneously issued check, even when the recipient did nothing to induce the issuance of the check. Id. at 981-82. In this case -- unlike the defendant in McRee -- Whitaker admitted that she made intentionally and knowingly false statements to the SSA to induce the SSA to continue sending her daughter's SSA benefits to Whitaker. Whitaker said she knew the SSA would stop sending payments if she reported truthfully that her daughter no longer lived with her and that she had been using her daughter's SSA benefits for her own living expenses. Because Whitaker failed to comply with her duties as a representative payee and was in fact unentitled to receive SSA payments on behalf of her daughter, the SSA benefits were issued to Whitaker in error. On this record, we conclude that the government retained a property interest in the proceeds of the erroneously-issued SSA payments even after they were deposited into Whitaker's bank account. See id. The district court committed no error in denying Whitaker's motion for judgment of acquittal.

AFFIRMED.