United States Court of Appeals,

Eleventh Circuit.

No. 94-4912.

UNITED STATES of America, Plaintiff-Appellee,

v.

Francisco Antonio MOYA, Defendant-Appellant.

Feb. 12, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-37-CR-SH), Shelby Highsmith, District Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and ENGEL[*], Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Defendant Francisco Moya asserts that statements he made to an Immigration and Naturalization Service inspector were obtained in violation of the Fifth Amendment or *Miranda v. United States,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He thus urges reversal of his conviction (before a jury) for illegal reentry into the United States in violation of 8 U.S.C. § 1326.

I.

Moya arrived in Miami International Airport bearing a resident-alien card and a Dominican passport. When an INS inspector ran a computer check on Moya's resident-alien card, that check yielded a "TECS" match,[1] and agents endeavored to determine whether Moya's arrival in the country was illegal. Moya was

---

[*]Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

[1]A "TECS" match alerts officials to a person's immigration history. Here, the match suggested Moya may have been deported.

referred to the "secondary" area at Customs, where Inspector Juan Lopez, a U.S. Immigration Officer, led Moya to his office and identified himself. Lopez proceeded to administer an oath to Moya, to interview Moya, and to transcribe his comments.

Moya's interview transcript was withdrawn as an exhibit pursuant to an agreement by the government not to use the transcript. The government did elicit some testimony about the interview, though, which reveals some of the interview's contents: Moya said he was entering the United States to see his family, denied having ever been deported, admitted he was no United States citizen, and said that he did not use aliases.

When the interview began, Lopez did not know of Moya's criminal record. Lopez testified that during the interview, a computer search confirmed that Moya had been earlier deported. After the interview, investigation by the INS showed Moya had not sought the permission of the Attorney General's Office to return to the United States, as is required under 8 U.S.C. § 1326.

Nothing in the record indicates that Moya was handcuffed en route to or in Lopez's office, was physically held or moved, or was accompanied by uniformed officers. Nor was he subjected to booking procedures, told he was not free to leave, or informed of formal accusations. Nothing indicates that he ever asked to leave or to see a lawyer.

## II.

This circuit has held that aliens at the border are entitled to *Miranda* warnings before custodial interrogation. *See United States v. Henry,* 604 F.2d 908, 914 (5th Cir.1979); *see also Jean*

*v. Nelson,* 727 F.2d 957, 972-73 (11th Cir.1984) (citing *Henry* ), *aff'd on other grounds,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

Whether Moya was "in custody" and entitled to *Miranda* warnings is a mixed question of law and fact; we review the district court's factual findings on the matter for clear error and its legal conclusions *de novo. Jacobs v. Singletary,* 952 F.2d 1282, 1291 (11th Cir.1992). At the outset, the issue is whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement ... to such extent that he would not feel free to leave." *United States v. Phillips,* 812 F.2d 1355, 1360 (11th Cir.1987) (citations omitted). The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant. *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984); *Phillips,* 812 F.2d at 1360. But, to be more specific, the Supreme Court has said that whether a suspect is in custody turns on whether restrictions on the suspect's freedom of movement are "of the degree associated with formal arrest." *Minnesota v. Murphy,* 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984) (citations omitted). And, under the objective standard, the reasonable person from whose perspective "custody" is defined is a reasonable innocent person. *See Florida v. Bostick,* 501 U.S. 429, 437-38, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). Whether a defendant knows he is guilty and believes incriminating evidence will soon be discovered is irrelevant.

We hold that Moya was *not* in custody in Inspector Lopez's office. As noted above, he was not physically moved or restrained by officers on the way to the scene of the interview. *Cf. Jacobs,* 952 F.2d at 1291 (person was in custody when grabbed and restrained by officer). No handcuffs were employed, and no guns were drawn. *Cf. United States v. Blackman,* 66 F.3d 1572, 1576-77 & n. 4 (11th Cir.1995) (even when handcuffed and held at gunpoint, suspect was not under arrest). He was not booked or told of formal accusations, nor told that he was under arrest. *See Phillips,* 812 F.2d at 1362 (suspect not in custody because "he was never placed under arrest or told that he was under arrest"). He did not ask to leave, and Inspector Lopez did not communicate to him that he was not free to do so. *See id.* (relying on fact suspect never requested to terminate the interview). Moya made no admissions during the interview that would have led a reasonable person in his place to conclude that he would be arrested immediately. *Cf. Henry,* 604 F.2d at 920 (when suspect admitted fact establishing legal violation, he was thereafter in custody). Instead, Moya denied that he had ever been deported.[2]

We note that our conclusion is buttressed by case law in this circuit explaining that whether interrogation is "custodial" should be interpreted in the light of the strong governmental interest in controlling the borders. *See United States v. Lueck,* 678 F.2d 895, 899 (11th Cir.1982) ("Interrogation at the border constitutes one

---

[2]Lopez testified at trial that, while he spoke to Moya, Moya was actually *not* "free to leave and roam about in the airport as he saw fit." We note that this testimony is of no consequence under the objective test of *Berkemer* and *Phillips,* because Lopez did not communicate his intent to Moya.

notable exception to the constitutional protection of *Miranda.* Because of the overriding power and responsibility of the sovereign to police national borders, the fifth amendment guarantee against self-incrimination is not offended by routine questioning of those seeking entry to the United States."). *Cf. United States v. Vigil-Montanel,* 753 F.2d 996, 998 (11th Cir.1985) (discussing *Lueck* in airport-security context).

Thus, because of the sovereign's responsibility, some degree of questioning and of delay is necessary and is to be expected at entry points into the United States. Because of this expectation, questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the "degree associated with formal arrest." *Murphy, supra.* We stress that events which might be enough often to signal "custody" away from the border will not be enough to establish "custody" in the context of entry into the country. This idea is consistent with cases involving facts similar to this one, which have indicated that a secondary interview is part of the border routine and does not require *Miranda* warnings.[3] *E.g., Henry,* 604 F.2d at 920 ("[R]eferral of a person entering this country to a secondary inspector is part of the "routine' border interrogation and does not, in and of itself, focus on the person so as to require a *Miranda* warning."); *see also United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979) (interrogation of suspect at border was "routine customs inquiry

---

[3]We recognize that because these cases were decided under the older, subjective test for custody, they do not control the outcome here.

for which Miranda warnings are unnecessary").

                                III.

Moya also argues that his confession was involuntary and so obtained in violation of the Fifth Amendment. The extensive evidence introduced on Moya's mental capacities is insufficient to prove his confession was involuntary. This circuit has held that "mental deficiencies of a defendant, by themselves, are not sufficient to render a confession involuntary. To establish that his confession was involuntary, [a defendant] must also establish police coercion." *Moore v. Dugger,* 856 F.2d 129, 132 (11th Cir.1988). Moya has not asserted that his interview was physically or psychologically coercive, and therefore his due process argument is without merit.

Moya's conviction is AFFIRMED.