[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 15, 2006**
**THOMAS K. KAHN**
**CLERK**

No. 04-16037
Non-Argument Calendar

_____

D. C. Docket No. 04-20474-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE BUILES MEDINA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 15, 2006)**

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Jose Builes Medina, a native and citizen of Colombia, appeals his conviction

for willfully and knowingly using an altered passport. See 18 U.S.C. § 1543. Builes argues that (1) the district court abused its discretion when it excluded evidence of Builes's intent to seek asylum, (2) the district court abused its discretion when it admitted the prior testimony of an unavailable witness, (3) the district court erred when it denied Builes's motion to suppress his statements to inspectors upon his arrival in the United States, (4) the prosecution committed misconduct during his trial, and (5) insufficient evidence supports his conviction. Each argument fails. We affirm.

## I. BACKGROUND

On June 26, 2004, Builes arrived at Miami International Airport and attempted to use a Venezuelan passport with the name "David Rodal Bernardez" and Builes's picture to enter the United States. Upon his arrival, Builes went through a "primary inspection area," where he presented his passport, a visa, and a customs declaration form. In addition to the Venezuelan passport, Builes also carried a Venezuelan identification card with the name "Rodal" and Builes's picture, an airline ticket from San Jose, Costa Rica, and a tour package for Disney World and Universal Studios in the name of Rodal. Builes was directed to a "secondary inspection area," where he waited one and a half hours before he met with Inspector Thomas Cason, who interviewed Builes. Builes told Cason that he

2

was applying for admission as a tourist because he was "coming to go visit Disney World."

Cason was suspicious because Builes's passport had a "strong chemical odor" and called Inspector Angela Martinez, who spoke Spanish more fluently, to assist him. Builes told Martinez that he was David Rodal Bernardez from Caracas, Venezuela, but Martinez suspected that Builes was not from Venezuela because of his accent. Martinez asked Builes to write his true name and place of birth on a piece of paper and left the room. When she returned, Builes had written his true name and place of birth. When Martinez asked Builes if he was willing to answer her questions, Builes said yes.

Builes told Martinez that he left Colombia ten days before his arrival in the United States and traveled to Panama and Costa Rica. He explained that he purchased the false passport for $3500 from a street vendor and boarded a plane in San Jose, Costa Rica, because it was "easier to get into the United States from San Jose." He also told her that even though he knew it was illegal to enter the United States without documentation, he had left his Colombian passport in Colombia and did not have valid documents to enter the United States. Builes stated to Martinez that no one had coerced him to answer her questions.

A federal grand jury indicted Builes for willfully and knowingly using an altered passport, and a jury trial was held in September 2004. At trial, Builes argued that he presented the altered passport to gain entry into the United States, but intended to apply for asylum once he was in the country. Builes explained that he had been persecuted by the Revolutionary Armed Forces of Colombia (FARC) and intended to escape political persecution in the United States. The jury could not reach a verdict, and the court declared a mistrial.

Before the second trial, the government moved in limine to exclude evidence of duress. The government argued that Builes could not establish that he was under an immediate threat of death or serious bodily injury when he presented the altered passport. The government also moved to exclude reports on conditions in Colombia, police reports of threats by the FARC, and a letter from guerillas threatening Builes's life.

Builes made two motions. First, Builes moved to present evidence of duress to negate intent. Builes sought to introduce evidence of his persecution in Colombia to establish that he did not have the intent to violate the law. Second, Builes moved to suppress statements made to the inspectors at Miami International Airport on the basis of the Fifth Amendment. Builes also argued that his statements to the inspectors should be suppressed because the interview with the

4

inspectors was a custodial interrogation and he had not been given Miranda warnings.

The district court denied Builes's motion to present a defense of duress because the evidence did not tend to negate specific intent. The court explained that Builes's evidence failed to show Builes was under an immediate threat of death or serious bodily injury. The district court excluded (1) the country reports, (2) the testimony of an immigration lawyer about the FARC in Colombia, and (3) evidence that Builes came to the United States to seek asylum. The district court also denied Builes's motion to suppress his statements to the inspectors because it found that the interrogation was non-custodial.

Builes also moved to exclude the testimony of Donna Eisenberg, a forensic document examiner who had testified at the first trial but was unavailable for the second trial. Builes conceded that Eisenberg would be unavailable at trial, but argued that his motive for cross-examination changed since the first trial because he was precluded from presenting a defense of duress. The district court found that the change of Builes's defense would not affect Eisenberg's testimony and denied Builes's motion to exclude.

At the second trial, the government presented evidence from Cason and Martinez and entered into evidence the previous testimony of Eisenberg. Cason

and Martinez testified about their interrogation of Builes. Both testified that they did not see Builes go through the primary inspection area, but "[t]here is no way a person can be in secondary without being through primary inspection." Cason also testified that Builes told him Builes intended to go to Disney World. The government read into evidence Eisenberg's testimony that the photograph page of the passport Builes had used had been lifted to substitute the photograph and reattached. Eisenberg's testimony also stated that an indentation in the laminate showed the original photograph had been larger and there was a "paper fiber disturbance" around the perimeter of the substituted photograph.

After the government rested, Builes made motions for a judgment of acquittal or a mistrial, both of which the district court denied. Builes then objected to (1) the preclusion of his defense to negate intent under the Fifth and Sixth Amendments and (2) the admissibility of Eisenberg's testimony under the Confrontation Clause of the Sixth Amendment.

During closing arguments, Builes questioned the inspectors' testimonies that Builes intended to visit Disney World and live and work in the United States. The government argued that Builes had intended to violate the law when he used an altered passport and questioned "what incentive in the world could these witnesses have had to lie." Builes objected to this remark, but the court overruled the

6

objection. The jury found Builes guilty, and the district court sentenced him to time served.

## II. STANDARD OF REVIEW

Because Builes's arguments that the district court improperly excluded evidence of Builes's intent to seek asylum and admitted Eisenberg's prior testimony are challenges to evidentiary rulings, we review them for abuse of discretion. United States v. Todd, 108 F.3d 1329, 1331 (11th Cir. 1997). Builes's argument that the district court erroneously denied his motion to suppress the statements to the inspectors is a mixed question of law and fact. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). When reviewing a denial of a motion to suppress, we accept findings of fact by the district court unless clearly erroneous and construe them in the light most favorable to the prevailing party. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000), but we review the application of the law to those facts de novo. Id. We review a determination of prosecutorial misconduct de novo because it is a mixed question of law and fact. United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997). Finally, we review "challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government." United States v. Futrell, 209 F.3d 1286, 1288 (11th Cir. 2000).

7

# III. DISCUSSION

Builes contends that (1) the district court abused its discretion when it excluded Builes's evidence of intent to apply for asylum, (2) the district court abused its discretion when it admitted Eisenberg's prior testimony because Builes's defense had changed from the previous trial, (3) the district court erred when it denied his motion to suppress his statement to the inspectors, (4) prosecutorial misconduct occurred, and (5) insufficient evidence supports his conviction. Although all his arguments fail, we discuss them in turn.

## A. Whether Exclusion of Builes's Intent to Seek Asylum Was an Abuse of Discretion?

Builes argues that the district court abused its discretion when it excluded evidence that he intended to apply for asylum in the United States because of the persecution he suffered at the hands of the FARC. Builes contends that this evidence negates his intent to present an altered passport. Although "[a] district court generally has broad discretion in ruling upon the admissibility of evidence," United States v. Brazel, 102 F.3d 1120, 1145 (11th Cir. 1997), "[a] defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense." United States v. Hurn, 368 F.3d 1359, 1363 (11th Cir. 2004).

The evidence that the district court excluded neither establishes a defense of duress nor negates Builes's intent to commit the crime. To establish a defense of duress, "[a] defendant must show that he acted under an immediate threat of death or serious bodily injury, that he had a well-grounded fear that the threat would be carried out, and that he had no reasonable opportunity to escape or inform [the] police." United States v. Wattleton, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002) (quoting United States v. Alzate, 47 F.3d 1103, 1104 (11th Cir. 1995)). Builes failed to show that the persecution he allegedly suffered in Colombia was an "immediate threat of death or serious bodily injury" because he traveled to Panama and Costa Rica for ten days before he presented his altered passport in the United States. Builes's fear of future persecution also does not support a defense of duress. See Wattleton, 296 F.3d at 1196 n.20 ("The requirement of immediacy of the threat is a rigorous one in which fear of future bodily harm . . . will not suffice.") (quoting United States v. Sixty Acres in Etowah County, 930 F.2d 857, 861 (11th Cir. 1991))).

Builes's motivation to apply for asylum in the United States does not negate his intent to present a false passport to immigration officials. Whether asylum was Builes's goal is immaterial to his mental state when he purchased a false passport

and used it to gain entry into the United States. The district court did not abuse its discretion when it refused to admit evidence of Builes's intent to apply for asylum.

*B. Whether the District Court Abused Its Discretion by Admitting Eisenberg's Prior Testimony?*

Builes next erroneously argues that the district court abused its discretion when it admitted the prior testimony of forensic document expert Eisenberg. Builes's argument is twofold: (1) the government failed to meet its burden to show that Eisenberg would be unavailable for trial; and (2) the preclusion of Builes's duress defense changed how he would have cross-examined Eisenberg. Both arguments fail.

Under the Federal Rules of Evidence, "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," then the prior testimony is admissible. Fed. R. Evid. 804(a). The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Amend. VI. The testimony of a witness at a prior trial is admissible if (1) the witness is unavailable and (2) the defendant had a prior opportunity to cross examine the witness. Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). We do not consider Builes's argument that the government did not establish that Eisenberg was unavailable because Builes

10

waived this argument when he conceded that Eisenberg was unavailable in the district court. See United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993).

Because Builes had a "similar motive" to cross examine Eisenberg at his first trial, Eisenberg's prior testimony is admissible. The defendant must have a "similar motive" to cross examine the witness in the previous trial. Fed. R. Evid. 804(b)(1). A "similar motive does not mean identical motive." United States v. Miles, 290 F.3d 1341, 1353 (11th Cir. 2002). Although Builes's defense theory changed, the charges against him were identical, and the government presented Eisenberg's testimony to prove the same element as at the first trial—that the passport Builes used was altered. See id. at 1353 (finding that the motive to cross-examine was not dissimilar where the charges were the same and the government offered the prior testimony to prove the same element). Because the underlying issues were legally and factually similar, Builes's motivation to cross-examine Eisenberg did not change. See id. The district court did not abuse its discretion when it admitted Eisenberg's testimony into evidence.

*C. Whether the District Court Erred When It Denied Builes's Motion to Suppress?*

Builes also contends that the district court erred when it denied Builes's motion to suppress his statements to inspectors because he was not given Miranda

11

warnings before a custodial interrogation. "[A]liens at the border are entitled to Miranda warnings before custodial interrogation." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). A suspect is in "custodial interrogation" if, "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." Id. (quoting United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987)). Because "some degree of questioning and of delay is necessary and is to be expected at entry points into the United States, . . . questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam." Id. at 1120.

Builes was not in custody when Cason and Martinez interviewed him. Cason and Martinez did not restrain him, he was not told that he was under arrest, and he never asked to leave. See Moya, 74 F.3d at 1119. Builes said that he was under no compulsion when Martinez asked if he was coerced to answer her questions. Although Builes waited one and a half hours for his interview, this delay does not rise to the "accusatory level" of a custodial interrogation. Id.; see United States v. McDowell, 250 F.3d 1354, 1363 (11th Cir. 2001). "[T]here is no fixed limit to the length of questioning." McDowell, 250 F.3d at 1363. The

district court did not err when it denied Builes's motion to suppress his statements at the secondary inspection area.

*D. Whether the Prosecution Committed Misconduct that Requires a New Trial?*

Builes also argues that the prosecution committed misconduct when it stated at trial that Builes traveled to the United States as a tourist, had no pending petition seeking immigration benefits, and knew that it was illegal to live and work in the United States without filing a petition. Builes further contends that the prosecution committed misconduct when it stated "what incentive in the world could these witnesses have had to lie" in its closing argument. "To find prosecutorial misconduct, . . . (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). It is improper for the prosecution to bolster a witness by vouching for his credibility if (1) the "jury could reasonably believe that the prosecutor indicated a personal belief in the witness's credibility" or (2) the government alludes to evidence not in the record to support the witness's testimony. Id.

The statements about Builes's status as a tourist without valid documentation and his knowledge that the lack of valid documentation was illegal were not improper. Cason testified that Builes had a tour package for Disney

World, and Martinez testified that Builes told her he had no pending petitions or other valid documentation. Martinez also testified that Builes told her he knew it was illegal to live and work in the United States without filing a petition. Because the prosecution referred to evidence in the record, the remarks were not improper.

The prosecution's statement, "what incentive in the world could these witness have had to lie," is also not improper. The prosecution rhetorically asked what Cason and Martinez would gain by lying. The argument did not "place[] the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity" or express a "personal belief in the witness's credibility." Eyster, 948 F.2d at 1206.

*E. Whether Sufficient Evidence Supports Builes's Conviction?*

Builes argues that the evidence is insufficient to support a conviction because the government failed to present evidence that he ever "exhibited or displayed" the altered passport to immigration officials. It is illegal to "willfully and knowingly use[] . . . [a] false, forged, counterfeited, mutilated, or altered passport." 18 U.S.C. § 1543. "We must determine on review whether a reasonable jury could have found that the evidence established the appellants' guilt beyond a reasonable doubt." United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995) (quoting United States v. Russo, 796 F.2d 1443, 1455 (11th Cir.1986)). If the

14

government relies upon circumstantial evidence, "reasonable inferences, and not mere speculation, must support the jury's verdict." United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994).

Although Cason and Martinez did not see Builes go through the primary inspection area, where travelers are asked to present their passports, both inspectors testified that travelers cannot enter the secondary inspection area unless they first pass through the primary inspection area. Martinez also testified the Builes did not have his passport because inspectors in the primary inspection area had taken it away from him. Based on this testimony and viewing the evidence in the light most favorable to the government, the jury could reasonably infer that Builes passed through and presented his passport at the primary inspection area. See United States v. Al Jibori, 90 F.3d 22, 26 (2d Cir. 1996) (holding that a jury could reasonably infer that a defendant had passed through the primary inspection area when he was directed to the secondary inspection area and inspectors had his altered passport.).

## IV. CONCLUSION

Builes's conviction is **AFFIRMED.**