[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15976
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00103-CB-C-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR MANUEL MANTA-CARILLO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 4, 2012)

Before BARKETT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Victor Manuel Manta-Carillo appeals the district court's denial of his suppression motion arguing that the government violated his Fifth Amendment right against self-incrimination when it failed to read him the warnings set out in Miranda v. Arizona, 384 U.S. 436 (1966).  The district court denied his motion to suppress on the ground that the circumstances surrounding Manta-Carillo's statements did not rise to the level of custodial interrogation and, thus, did not implicate Miranda. Thereafter, Manta-Carillo and the government entered into a stipulation of facts, and the district court found him guilty in a bench trial on that basis.  On appeal, Manta-Carillo claims that the district court erred in denying his motion to suppress his statements.  After careful review, we affirm.[1]

In an appeal from a denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law de novo.  United States v. Luna-Encinas, 603 F.3d 876, 880 (11th Cir. 2010).  Where a district court erroneously denies a motion to suppress, that error is harmless if other evidence of the defendant's guilt is so overwhelming that the defendant suffered no prejudice

---

[1] Moreover, because both parties operated under the assumption that Manta-Carillo had preserved his right to appeal the suppression issue, and because the parties' claim that we lack jurisdiction over the suppression issue is not clearly supported by controlling authority, the joint motion to remand for an evidentiary hearing concerning whether the stipulation of facts as currently written renders moot any disposition on the suppression issue is DENIED.

2

from the admitted evidence. United States v. Rhind, 289 F.3d 690, 694 (11th Cir. 2002).

The Fifth Amendment of the U.S. Constitution provides individuals with a right against self-incrimination. U.S. Const. amend. V. In Miranda, the Supreme Court held that, in its case in chief, the prosecution may not use self-incriminating statements elicited during a custodial interrogation unless officials warn a suspect of his rights against self-incrimination beforehand. 384 U.S. at 444. Nevertheless, law enforcement officers must give the warning only when custodial interrogation begins. Luna-Encinas, 603 F.3d at 880. Miranda does not bar admission of any statement given freely and voluntarily. Miranda, 384 U.S. at 478; see also Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991) (holding that voluntary and spontaneous comments by a defendant, even after Miranda rights are asserted, are admissible if not made in response to government questioning). Moreover, the Self-Incrimination Clause in the Fifth Amendment does not bar the admission of physical evidence that is the fruit of an unwarned but voluntary statement. United States v. Jackson, 506 F.3d 1358, 1360-61 (11th Cir. 2007) (citing United States v. Patane, 542 U.S. 630, 636 (2004) (plurality opinion); and Patane, 542 U.S. at 645 (Kennedy, J., concurring in the judgment)).

We consider whether an interrogation is custodial in the light of the strong government interest in controlling its borders. United States v. Moya, 74 F.3d 1117,

3

1119 (11th Cir. 1996). To determine whether an individual is in custody, courts look at whether the restrictions on the suspect's freedom of movement rise to the degree associated with formal arrest. Id. (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). Even if a defendant feels constrained not to leave the scene of an encounter with law enforcement, that, by itself, does not necessarily rise to the level of being in custody for Fifth Amendment purposes. Luna-Encinas, 603 F.3d at 881; United States v. Muegge, 225 F.3d 1267, 1270-71 (11th Cir. 2000).

In Moya, an Immigration and Naturalization Service inspector ran a computer check on the defendant's resident alien card when the defendant arrived in the country. Id. at 1118. The computer check suggested that the defendant may have been deported previously. Id. at 1118 n.1. Officials referred the defendant to a secondary area at customs, and an inspector eventually led the defendant to an office to interview the defendant. Id. at 1118. In the interview, the defendant denied ever having been deported, but a computer search later confirmed that he had been deported. Id. In holding that the defendant was not in custody, we emphasized several factors: (1) officials did not physically move or restrain him on the way to the scene of the interview; (2) officials did not use handcuffs or draw their weapons; (3) the defendant was not booked, told of formal accusations, or told that he was under arrest; and (4) the defendant did not ask to leave, and the inspector never told him that

4

he could not leave. Id. at 1119. We also stated that the defendant made no admissions that would have led a reasonable person to conclude that he would be arrested immediately. Id. In reaching its conclusion, we held that questioning at the border must rise to "a distinctly accusatory level" before a reasonable person would feel the restraints on his freedom of movement to the degree associated with formal arrest. Id. at 1120. We also explained that events signaling "custody" away from the border may not establish "custody" in the context of entry into the country. Id.

In this case, the record shows that Manta-Carillo was the captain of the Pera, a commercial ship that arrived in Mobile, Alabama from Port au Prince, Haiti. When the Pera arrived in Mobile, officials boarded the vessel to conduct an inspection of the ship. A customs and border patrol officer found a DVD with a cover depicting "bestiality" in Manta-Carillo's quarters. When an agent informed Manta-Carillo that this DVD may be a problem, Manta-Carillo stated that he possessed child pornography on his laptop computer and on an external hard drive. Agents then questioned Manta-Carillo and obtained a written confession. Agents also seized his laptop computer and external hard drive and later searched both pursuant to a search warrant, and they found approximately 160 images of child pornography. At no point did the agents read Miranda warnings to Manta-Carillo.

5

On this record, Manta-Carillo has not shown that he was in custody at any point, and, therefore, has not shown that he was entitled to Miranda warnings. For starters, Manta-Carillo was not physically restrained. Agents did not arrest Manta-Carillo following the interview and, in fact, allowed him to leave the country with the Pera. Formal accusations were not brought during the course of the interview, and agents never told Manta-Carillo that he could not leave or terminate the interview. We recognize that Manta-Carillo was unable to leave the Pera and the Pera was unable to leave the port during the inspections; however, these restrictions on his movements were the result of a routine border inspection. Senior Special Agent Christopher Anderson testified that the interview lasted approximately an hour and a half, and that the inspection of the entire ship took just over two hours. During that time, Anderson had a Spanish-speaking agent confirm that Manta-Carillo had admitted to possessing child pornography, and he had a second Spanish-speaking agent aid in translating a written confession to Manta-Carillo. Although the interview was moved from the cabin across the hall from Manta-Carillo's quarters to his quarters, none of the evidence in the record suggests that agents ever physically forced Manta-Carillo to move. Further, while Manta-Carillo made an admission that likely would have led a reasonable person to believe that he would be arrested immediately, none of the other factors outlined in Moya support a finding that

6

Manta-Carillo was in custody for Fifth Amendment purposes. Thus, under these circumstances, Manta-Carillo was not in custody. Moya, 74 F.3d at 1119-20.

Manta-Carillo also asserts that he only blurted out that he had child pornography after agents confronted him with possession of other contraband. Even if true, Manta-Carillo has not shown how this indicates that his initial admission implicated Miranda. Per Special Agent Anderson's testimony, Manta-Carillo confessed to having child pornography after Anderson told him that a DVD containing bestiality found in his quarters "may be a problem." From the record, it appears that Manta-Carillo's statement was not in response to any question that Anderson posed and, therefore, Miranda would be inapplicable, even assuming Manta-Carillo was in custody for Fifth Amendment purposes at that point. Cannady, 931 F.2d at 754.

In a single sentence at the end of his initial brief, Manta-Carillo also asserts that "his statements and fruits of his statement[s] must be suppressed." He does not elaborate upon what the fruits of his statements are, but the record suggests that he is referring to the search and seizure of his laptop and external hard drive. This passing mention is likely insufficient to raise an argument that the fruits of his statements must be suppressed. United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that if an appellant makes only a passing reference to an

7

issue in an initial brief, he has abandoned it).  Even if he had sufficiently raised such an argument, though, it would be unpersuasive because the Self-Incrimination Clause does not require exclusion of the physical fruits of a voluntary statement.  Jackson, 506 F.3d at 1360-61.

Finally, even assuming the district court did err in denying Manta-Carillo's motion to suppress his statements for Miranda violations, any such error was harmless.  As the record shows, the images recovered from Manta-Carillo's laptop and external hard drive -- admissibility of which is not implicated by any purported Miranda violations -- provided overwhelming evidence that Manta-Carillo was guilty. Rhind, 289 F.3d at 694.  Accordingly, we affirm.

**AFFIRMED.**