[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15438
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00007-JES-DNF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT RUSSELL MATCOVICH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 3, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

Robert Matcovich appeals the district court's denial of his motion to suppress inculpatory statements he made to federal agents, without receiving Miranda[1] warnings, during an allegedly custodial interrogation.[2]  The district court denied Matcovich's motion on the ground that he was not in "custody" at the time he made the inculpatory statements and, therefore, the law enforcement officers did not have to give a Miranda warning.  On appeal, Matcovich argues that this conclusion was error.

We review a district court's denial of a motion to suppress as a mixed question of law and fact.  United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009).  "Whether [a defendant] was 'in custody' and entitled to Miranda warnings is [also] a mixed question of law and fact."  United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996).  We review de novo the district court's legal conclusions and we review its factual findings for clear error.  Id.

I.

The Supreme Court in Miranda "established that custodial interrogation cannot occur before a suspect is warned of [his] rights against self-incrimination." United States v. Newsome, 475 F.3d 1221, 1224 (11th Cir. 2007).  Pre-custodial questioning, in contrast, does not require Miranda warnings.  United States v.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2] After the district court denied his motion to suppress, Matcovich's case proceeded to a bench trial during which he was found guilty of possession of child pornography and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B), (b)(1), (b)(2).

2

Street, 472 F.3d 1298, 1309 (11th Cir. 2006). The "initial step" in determining whether a person was in "custody" under Miranda "is to ascertain whether, in light of the objective circumstances of the interrogation" and the totality of all the circumstances, "a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." Howes v. Fields, ___ U.S. ___, ___, 132 S. Ct. 1181, 1189 (2012) (alterations and quotation marks omitted). An interviewee's "status as a suspect, and the coercive environment that exists in virtually every interview by a police officer of a crime suspect," does not automatically create a custodial situation. United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (quotation marks omitted).

One of the factors a court should consider when determining whether the defendant was "in custody" is the location of questioning. See Howes, 132 S. Ct. at 1189. Although not dispositive, "courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home." United States v. Brown, 441 F.3d 1330, 1348 (11th Cir. 2006) (alterations and quotation marks omitted). Courts may also consider whether a defendant was "unambiguously advis[ed] . . . that he is free to leave and is not in custody." Id. at 1347. This is a "powerful factor" that "generally will lead to the conclusion that the defendant is not in custody absent a finding of restraints that are so extensive that telling the suspect he was free to

3

leave could not cure the custodial aspect of the interview." Id. (quotation marks omitted). Other relevant factors "includ[e] whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled," Street, 472 F.3d at 1309 (quotation marks omitted), as well as the duration of the questioning, statements made during the interview, the presence of physical restraints during questioning, and "the release of the interviewee at the end of the questioning," Howes, 132 S. Ct. at 1189.

II.

Considering the totality of the circumstances, the factors weigh in favor of finding Matcovich's interrogation non-custodial. The Magistrate Judge[3] determined that Special Agent Cox told Matcovich that he was not under arrest and that immediately before questioning began, Special Agent Cramsey told Matcovich that "he was not under arrest, was free to leave, could begin to answer questions and then stop, and could answer only the questions he wished." In addition, the Magistrate Judge found that Matcovich was interviewed in the place where he had lived for six years. Matcovich has not shown that these findings were clear error, and they strongly suggest that Matcovich's interrogation was not custodial. See Brown, 441 F.3d 1347–48. Further, there is no indication that there were restraints

---

[3] The district court adopted the Magistrate Judge's Report and Recommendation.

4

on Matcovich's freedom of movement "that [were] so extensive that telling [him] he was free to leave could not cure the custodial aspect of the interview." Id. at 1347 (quotation marks omitted).

There are also a number of factors that suggest the interview was custodial, even though explained as being necessary for security reasons. First, when law enforcement officers entered the boarding house where Matcovich lived in order to execute the search warrant, there was a "police-dominated atmosphere" with a number of officers handcuffing residents and bringing them to a central location. However, when cuffed the residents were told that "they were not under arrest, it was just for officer safety" and "shortly thereafter, the search warrant was announced, the handcuffs were removed, and the residents were told that they were not under arrest." Second, Matcovich was not allowed to go to his bedroom to retrieve his cigarettes, rather, an agent retrieved the cigarettes for him. Special Agent Cramsey testified that this was out of precaution for the safety of the officers who were still searching Matcovich's room pursuant to a search warrant. Third, Matcovich was required to leave the door slightly open when using the bathroom. Special Agent Cramsey testified that this was for his safety and Matcovich's safety because by this point it had become clear to Special Agent Cramsey that Matcovich was "a perpetrator and offender."

5

However, these facts standing alone do not render this a custodial interrogation when: (1) Matcovich was unambiguously told that he was free to leave, was not in custody, and did not have to answer questions, see Brown at 1347; (2) he was "in the familiar and comfortable surroundings" of his home, see id. at 1349; (3) he was not physically restrained during questioning, see Howes, 132 S. Ct. at 1189; (4) the agents' weapons were holstered when they spoke with Matcovich, see United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010); (5) "[a]lthough an officer accompanied [Matcovich] throughout the house for safety reasons, he was free to" go outside to smoke and move about the house to get dressed and make coffee, see Brown, 441 F.3d at 1348–49; (6) there is no evidence that Special Agent Cramsey conveyed his suspicion that Matcovich was a perpetrator to Matcovich, see Stansbury v. California, 511 U.S. 318, 325, 114 S. Ct. 1526, 1530 (1994); and (7) after the interview was over, Matcovich left voluntarily with an FBI polygrapher and was not arrested until a later time, cf. Howes, 132 S. Ct. at 1189.

For these reasons, we agree with the district court that Matcovich's statements were not made during a custodial interrogation.

**AFFIRMED.**

6