[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12279
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60316-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AIDA LUZ MALDONADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 7, 2014)

Before WILSON, FAY and KRAVITCH, Circuit Judges.

PER CURIAM:

Aida Maldonado appeals the district court's denial of her motion to suppress

inculpatory statements she made to postal inspectors during an allegedly custodial

interrogation.  The district court denied Maldonado's motion on the ground that she was not "in custody" at the time she made the inculpatory statements and, therefore, the postal inspectors did not have to give a *Miranda*[1] warning.  After a thorough review, we affirm.

## I.

United States postal inspectors initiated an investigation of Maldonado, a mail carrier, after receiving a complaint from a mail customer who stated that a Visa gift card she had sent to her son in Miami had never arrived.  The inspectors conducted a "live test," where they set up surveillance and provided Maldonado with a gift card in a sealed envelope with an electronic transmitter that was designed to alert when the envelope was opened.  Later that day, a team of postal inspectors stopped Maldonado and discovered the live test piece open inside of her mail truck.  She returned to her assigned post office with the inspectors and was interviewed inside a supervisor's office with the door closed.  Maldonado initially denied any wrongdoing, but later admitted to taking the gift cards and opening the live test piece.  Following a jury trial, Maldonado was convicted of two counts of mail theft and one count of unauthorized opening of mail by a postal employee.

## II.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). "Whether [a defendant] was 'in custody' and entitled to *Miranda* warnings is [also] a mixed question of law and fact." *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996). We review *de novo* the district court's legal conclusions and we review its factual findings for clear error. *Id.*

A "custodial interrogation cannot occur before a suspect is warned of [her] rights against self-incrimination." *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) (citing *Miranda v. Arizona*, 384 U.S. 436, 445 (1966)). Pre-custodial questioning, in contrast, does not require *Miranda* warnings. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). The "initial step" in determining whether a person was "in custody" under *Miranda* "is to ascertain whether, in light of the objective circumstances of the interrogation" and the totality of all the circumstances, "a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. ___, ___, 132 S.Ct. 1181, 1189 (2012) (alterations and internal quotation marks omitted). An interviewee's "status as a suspect, and the coercive environment that exists in virtually every interview by a police officer of a crime suspect," does not automatically create a custodial situation. *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000) (internal quotation marks omitted).

3

One of the factors a court should consider when determining whether the defendant was "in custody" is the location of questioning. *See Howes*, 132 S.Ct. at 1189. Although not dispositive, "courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home." *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) (alterations and internal quotation marks omitted). Courts may also consider whether a defendant was "[u]nambiguously advis[ed] . . . that [s]he is free to leave and is not in custody." *Id.* at 1347. This is a "powerful factor" that "generally will lead to the conclusion that the defendant is not in custody absent a finding of restraints that are so extensive that telling the suspect [s]he was free to leave could not cure the custodial aspect of the interview." *Id.* (internal quotation marks omitted). Other relevant factors include the duration of the questioning, statements made during the interview, the presence of physical restraints during questioning, and "the release of the interviewee at the end of the questioning." *Howes*, 132 S.Ct. at 1189.

III.

Considering the totality of the circumstances, we conclude that the district court properly found Maldonado's interrogation was non-custodial. Prior to the start of the interview at Maldonado's assigned post office, Special Agent Eugene

4

Davis read Maldonado a form containing *Garrity*[2] warnings, which informed her that the interview was voluntary and that she could stop answering questions at any time.   Maldonado initialed next to each of the *Garrity* rights—including that "[t]his interview is strictly voluntary, and I may leave or stop answering questions at any time"—and signed the acknowledgment at the bottom of the form stating that she understood these rights.  These facts strongly suggest that Maldonado's interrogation was not custodial. *See Brown*, 441 F.3d at 1347-48.  Further, there is no indication that there were restraints on Maldonado's freedom of movement "that [were] so extensive that telling [her] [s]he was free to leave could not cure the custodial aspect of the interview." *Id.* at 1347 (quotation marks omitted).

Although there were some factors to suggest the interview was custodial in nature, such as: (1) when a team of U.S. postal inspectors stopped Maldonado while she was working her delivery route, they effectively blocked in her mail truck and appeared to indicate that returning with them to the post office was mandatory; and (2) prior to the start of the interview at the post office, a female postal inspector accompanied Maldonado to the restroom and refused to let Maldonado close the door.  These facts, however, do not render this a custodial interrogation because: (1) Maldonado was unambiguously told that she was free to

---

[2] *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) (holding that the Fourteenth Amendment prohibits the use of coerced statements obtained under threat of removal from government employment).

leave, was not in custody, and did not have to answer questions, *see Brown*, 441 F.3d at 1347; (2) she was "in the familiar . . . surroundings" of her workplace, *see id.* at 1349; (3) she was not physically restrained during questioning, *see Howes*, 132 S.Ct. at 1189; (4) the postal inspectors did not brandish their weapons when they first approached Maldonado on her delivery route, or later during the interview, *see United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010); (5) although a postal inspector accompanied Maldonado to the restroom for safety reasons, Maldonado's movements were never restricted and she was free to leave at any time, *see Brown*, 441 F.3d at 1348-49; and (6) after the interview was over, Maldonado left voluntarily and was not arrested until approximately six weeks later, *cf. Howes*, 132 S.Ct. at 1189.

For these reasons, we agree with the district court that Maldonado's statements were not made during a custodial interrogation.  Accordingly, the district court properly denied the motion to suppress.

**AFFIRMED.**

6