JUSTICE MCKINNON,
specially concurring and dissenting in part.
¶36 To begin, the Court addresses in Issue Two a matter not raised by the parties—voluntariness of Maile’s confessions. While the District Court addressed voluntariness as an issue in its order denying Maile’s motion to dismiss, Made has not raised that issue on appeal. The sole issue Made has presented to this Court is whether he was in custody. As the State does not dispute that there was an interrogation, if Made were in custody and not advised of his Miranda rights then his statements would have to be suppressed. Consideration of the voluntariness of Maile’s statement is premised upon the Fifth Amendment and involves a different inquiry from whether Made was in custody. While a custodial interrogation that occurs following a Miranda advisement may still implicate considerations of voluntariness; voluntariness is not relevant if there was a custodial interrogation without a Miranda advisement, for the simple reason that the statements are automatically suppressed. In these proceedings, there is no dispute that a Miranda advisement was not given and that an interrogation occurred; consequently, Made chose to raise on appeal only the issue of whether he was in custody. In my opinion, the Court errs in nonetheless addressing the voluntariness of Maile’s confession.
¶37 It is also my view that the Court confuses, through its blending of Fourth Amendment jurisprudence and Fifth Amendment jurisprudence, the context of this particular stop and the significance of context in resolving whether Made was in custody for purposes of Miranda. This was a fixed checkpoint established by FWP pursuant to § 87-1-207, MCA, which allows wardens to stop, detain, and question individuals without any individualized suspicion that the individuals were engaged in unlawful hunting activity. It is not a Terry stop, requiring particularized suspicion; a voluntary stop by Made himself; or a formal arrest, requiring probable cause. As long as the interrogation bore a reasonable relationship to the duties of the wardens, no other justification for the encounter was required. This does not resolve the question, however, of whether Made was in custody for purposes of Miranda. As best I can ascertain, this Court has not previously considered the implications of Miranda within the *49 context of a fixed checkpoint established pursuant to statute.[1]
¶38 The Supreme Court has concluded that a stop at a fixed checkpoint constitutes a seizure. United States v. Martinez-Fuerte, 428 U.S. 543, 556, 96 S. Ct. 3074, 3082 (1976) (“It is agreed that checkpoint stops are ‘seizures’ within the meaning of the Fourth Amendment.”). The Supreme Court has explained, and we have endorsed, that “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); INS v. Delgado, 466 U.S. 210, 228, 104 S. Ct. 1758, 1769 (1984); see Munson, ¶ 23. Nonetheless, a Fourth Amendment seizure does not necessarily render a person in custody for purposes of Miranda. For example, the Supreme Court has specifically held that a traffic stop constitutes a Fourth Amendment seizure. See Delaware v. Prouse, 440 U. S. 648, 653, 99 S. Ct. 1391, 1396 (1979). Such stops are not, however, necessarily custodial for purposes of Miranda. Berkemer, 468 U.S. at 440, 104 S. Ct. at 3150. The Berkemer Court noted the distinction between a Fourth Amendment seizure and Miranda’s custody requirement when it explained “the threat to a citizen’s Fifth Amendment rights that Miranda was designed to neutralize has little to do with the strength of an interrogating officer’s suspicions.” Berkemer, 468 U.S. at 435, 104 S. Ct. at 3148, n.22.
¶39 A number of courts have recognized the important distinction *50 between a Fourth Amendment seizure and Miranda’s custody requirement, and have held that while a stop at a fixed checkpoint may be a Fourth Amendment seizure, it is not custodial for purposes of Miranda. See United States v. Fernandez-Ventura, 132 F. 3d 844, 846 (1st Cir. 1998), and United States v. Moya, 74 F. 3d 1117, 1120 (11th Cir. 1996). The critical distinction between a seizure in the Fourth Amendment sense and custody in the Miranda sense, is that custody arises only if the restraint on freedom is a certain degree-the degree associated with a formal arrest. Berkemer, 468 U.S. at 440, 104 S. Ct. at 3150. Accordingly, the context of the police encounter, such as whether there has been a formal arrest, is significant in determining whether a person is in custody for purposes of Miranda.
¶40 Of the several types of police-citizen encounters-voluntary cooperation, a Terry investigatory detention, and a formal arrest-Miranda’s custody requirement is triggered only in situations associated with a formal arrest. While the unique context of a checkpoint allows wardens to stop, briefly detain, and question individuals without any individualized suspicion that the individuals are engaged in criminal activity, such checkpoints do not necessarily trigger the custody requirement of Miranda. The protections afforded persons at checkpoints pursuant to the Fourth Amendment to the United States Constitution and Article II, Sections 10 and 11 of the Montana Constitution lie in the appropriate limitations on the scope of the stop. See United State v. Martinez-Fuerte, 428 U.S. 543, 566-67, 96 S. Ct. 3074, 3087 (1976). During a routine checkpoint stop, law enforcement may ask questions and conduct an investigation reasonably related to their duties, but any extended detention of an individual beyond the scope of the routine checkpoint violates the F ourth Amendment, unless justification for extension of the detention is supported by reasonable suspicion, consent, or probable cause. In contrast, the Fifth Amendment protections established in Miranda apply anytime an individual is in custody and is being interrogated, regardless of the level of Fourth Amendment justification.
¶41 Section 87-1-207, MCA, allows FWP to “establish checking stations when considered necessary to inspect licenses of hunters and anglers to inspect any game animals, fish, or fur-bearing animals in the possession of hunters and anglers.” Thus, at a fixed checkpoint, FWP wardens may stop, briefly detain, and question individuals without any individualized suspicion that the particular individual is engaged in criminal activity. While a seizure has occurred, the requirements of Miranda are not implicated because the individual is *51 not in custody, akin to a formal arrest. Berkemer, 468 U.S. at 436-39, 104 S. Ct. at 3148-49; Elison, ¶ 29. Although a Terry-type stop similarly does not invoke Miranda requirements, a Terry-type stop, in contrast to a checkpoint stop, requires that law enforcement have articulable reasonable suspicion that an individual is involved in criminal activity. Articulable suspicion is the justification for a Terry-type stop; § 87-1-207, MCA, combined with Boyer’s rationale, is the justification for a checkpoint stop.
¶42 Here, in my opinion, Maile’s encounter with seven wardens over an extended period of time in which the State concedes an interrogation took place, exceeded the parameters of the detention authorized by § 87-1-207, MCA. Maile was detained for nearly 78 minutes at the checkpoint, and wardens followed up their initial investigation with a four hour visit to Maile’s home. In total, Maile’s encounter with law enforcement lasted 5 hours. These facts, in conjunction with the State’s concession that there was an interrogation, demonstrate that the scope of the stop exceeded the brief detention and inquiry authorized by § 87-1-207, MCA. However, whether justification for the extension was based upon Maile’s voluntary cooperation, the development of reasonable suspicion, or even probable cause does not resolve the question of whether Maile was in custody. Therefore, although I would conclude that the encounter exceeded the parameters of a checkpoint stop authorized by § 87-1-207, MCA, such a conclusion does not dictate a determination that Maile was in custody for purposes of Miranda. The Court’s inquiry on this point, whether Maile was in custody akin to a formal arrest, is correct and I concur with the Court’s conclusion that Maile was never under “formal arrest” and thus cannot be deemed in custody. While the record supports that there was an extension of the detention initially authorized by § 87-1-207, MCA, and an interrogation as the State concedes, the record does not support a conclusion that Maile was under formal arrest or in custody for purposes of Miranda.
¶43 Accordingly, I disagree with the Court’s analysis, particularly our failure to acknowledge the context of this stop—a fixed checkpoint pursuant to § 87-1-207, MCA—and to blend the justifications for a Fourth Amendment seizure with Miranda’s Fifth Amendment neutralizing protections. Section 87-1-207, MCA, is the only justification for Maile’s stop and the context within which our Miranda custodial analysis must begin. Any extension of the checkpoint detention beyond what was reasonable for wardens to dispel suspicions of wrongdoing should have been supported by Maile’s voluntary *52 cooperation, reasonable suspicion, or probable cause. The presence or absence of adequate justification, however, is not before the Court. Nonetheless, assuming the absence of any of these justifications and therefore a corresponding Fourth Amendment violation, Miranda's Fifth Amendment neutralizing protection is still not implicated when the suspect is not in custody. See Berkemer, 468 U.S. at 442, 104 S. Ct. 3141 (“A policeman’s unarticulated plan has no bearing on the question whether a suspect was ‘in custody’ at a particular time; the only relevant inquiry is how a reasonable man in the suspect’s position would have understood his situation.”). The existence of probable cause does not mandate that law enforcement place a suspect under formal arrest; a suspect does not have a right to be arrested. Concomitantly, the existence of probable cause does not mandate that Miranda warnings be given absent custody and interrogation. Although Maile’s detention exceeded the checkpoint stop authorizedby § 87-1-207, MCA, by both its length and the wardens’ extensive interrogation, a conclusion that Made was in custody at any time during the extended detention period cannot be supported by the record. Even assuming Made was seized for an extended period of time without Fourth Amendment justification, there simple were no circumstances indicating Made was ever subject to a formal arrest during his detention.
¶44 I agree with the ultimate result reached by the Court on Issue One; however, I would apply the foregoing analysis in reaching the result. Accordingly, I specially concur on Issue One. I would not reach Issue Two and therefore I dissent from the Court’s decision to address the merits.

 Our decision in Boyer considered whether there was a search and seizure of fish under the Fourth Amendment and Article II, Section 10 of Montana’s Constitution, not whether Miranda warnings applied to a person stopped at a fixed checkpoint. We held in Boyer that “[a]n impermissible ... seizure only occurs within the meaning of Article II, Section 10 of the Montana Constitution when a reasonable expectation of privacy has beenbreached .’’ Boyer, ¶ 18 (emphasis added). We concluded in Boyer that “no objectively reasonable expectation of privacy exists when a wildlife enforcement officer checks for hunting and fishing licenses in open season near game habitat, inquires about game taken, and requests to inspect game in the field.” Boyer, ¶ 24. Our conclusion was premised upon the licensing requirements establishing an angler’s acknowledgment of the prospect that there will be at least some governmental intrusion into their sporting activities. We rejected Boyer’s claim that he had a legitimate expectation of privacy in his catch, concluding, instead, that the authorization provided to wardens to inspect game pursuant to § 87-1-502(6), MCA, established that Boyer’s subjective expectation of privacy in his catch was not one society was willing to recognize as objectively reasonable. Thus, Boyer informs us only with respect to the Fourth Amendment and Article II, Section 10 of Montana’s Constitution, establishing that a detention to inspect fish does not require individualized suspicion or a justification. Boyer does not address custody of a suspect and the requirements of Miranda, it addresses the justification for the search and seizure of fish.